## The Houston and Great Northern Railroad Co. v. W. S. Parker.

1. Practice—Charge of court.—In an action against a railroad company for damages from backwater caused by an insufficient culvert in an embankment made by the railroad company, it was the duty of the court to instruct the jury as to the law applicable to the case of injury to the property of an adjacent land-owner, growing out of the manner in which the railroad was constructed.

2. Same—Diligence—Care.—In such case the railroad company was required to use ordinary care, in the construction of a culvert under an embankment made in constructing its road, to provide against ordinary rains, but not against such extraordinary floods as would not reasonably be anticipated.

3. Ordinary care.—Ordinary care is such care as is usually exercised under like circumstances by men of ordinary prudence in their own affairs. In such case it requires that those floods be guarded against which would by such men be anticipated and provided for.

4. Negligence—Practice.—In the absence of a law, or of a settled rule of law, defining the acts which constitute negligence, it is a fact to be found by the jury.

5. Case approved.—Texas and Pacific Railroad Co. *v.* Murphy, 46 Tex., 356, cited and approved.

6. Extraordinary floods.—Discussion of same as defense in such case, and as to care in providing against them by a railroad company in constructing embankments and the necessary culverts to allow escape of water drainage.

7. Practice—General issue.—That injury sued for was occasioned by a city bridge, and not from an insufficient culvert under an embankment made by a railroad company, can be proved in defense under the general issue in a suit against the railroad company for damages.

8. Liability in damage.—If the railroad company had constructed, besides its embankment, and as part of it, a bridge upon the public street, the fact that the bridge was on the street and used by the public would not be a defense to an action for damages from the obstruction of the water and partly occasioned by the bridge.

9. Same.—That mill buildings injured by overflow from such backwater are partly situate upon the public street or highway, is not a defense in an action against parties causing such overflow.

10. Verdict.—It is proper in practice for a jury to itemize damages found upon several grounds of action submitted to them.

11. Same.—See verdict held sufficient.

Appeal from Smith. Tried below before the Hon M. H. Bonner.

A careful statement of the case is given in the opinion.

*Jones & Henry,* for appellant.—In the first assignment of error it is stated that the court erred in that portion of the charge to the jury where the jury is informed, substantially, that the material issues in the case are made by the general

denial of the truth of the statements in the petition and by
the plea of contributory negligence; and that this statement
by the court to the jury in regard to the issues was calculated
to mislead them, when, in fact, the pleadings show that there
are three additional material issues: one, that the overflows
that injured appellee's mill property occurred during extra-
ordinary rains or floods of water, and that appellant, in the
construction of its embankment and culvert, was not required
to provide against extraordinary floods; another, that it was
not the fault of appellant's culvert that the water in the
branch during extraordinary rains or floods of water over-
flowed and injured appellee's premises and machinery, but
that it was caused by the bridge culvert that connects with
appellee's culvert becoming choked up by drift-wood and
other material carried down the current of the branch; and
that this bridge culvert is in one of the public streets of the
city of Tyler, and that the bridge and its culvert belong to
the city of Tyler; and the other, that if appellant is guilty of
a nuisance in the erection of its embankment and culvert, it
is a legalized nuisance, and appellee is also guilty of a nui-
sance by extending his mill buildings into two of the public
streets of the city of Tyler; and that appellant exercised its
nuisance in a legal and proper manner; and that appellee
being *in pari delicto* with appellant, appellant is not respon-
sible to appellee for any damages resulting to him from
appellant's nuisance.

If the three issues ignored by the court in the charge are
in fact made by the pleadings, (and there can be no doubt, as
we think, of that fact,) the court could properly have ignored
them only in the absence of testimony sustaining or tending
to sustain them.   (Counsel discussed testimony on these
issues.)

The second and seventh assignments of error will be con-
sidered together.   The second assignment complains of a
supposed error in a portion of the charge of the court, where
the court says, substantially, that appellant was not bound so

to construct its embankment and culvert as to provide against extraordinary floods of rain, unless they could be foreseen and anticipated by the usual engineering skill of its engineers in constructing embankments and culverts. The first objection to this portion of the charge is, that the court, having previously, in the charge, announced to the jury that there were but two issues before them,—one raised by the general denial, and the other by the plea of contributory negligence,—this portion of the charge was abstract and impertinent to the case, it being impossible to present such an issue in any other way than by a special plea in confession and avoidance. The appellant, to avail himself of the defense that appellee's mill property was overflowed by an extraordinary flood, against which it was not required to provide in the construction of its embankment and culvert, was compelled to put in a plea confessing the fact of the overflow, but denying its responsibility for its consequences because the overflow was occasioned by an extraordinary flood, against which appellee was not required to provide. In no other way could this issue be raised.

The second objection to this portion of the charge is, that the qualifying words in it vitiate it when applied to cases of injury to property. If it had been a case of injury to a human being, then the portion of the charge to which we object would have been proper and legal. (See Shear. & Red. on Neg., secs. 444, 445, and cases referred to in the notes.) In the cases referred to the injuries done were to human beings. It is only in such cases, as we understand the law, that dangers which might reasonably be expected to occur, though rarely, are required to be guarded against. In such cases the utmost care is required; but in cases involving injuries to property ordinary care is alone required. (Shear. & Red. on Neg., sec. 24.) As to the law of the liability of railroad companies for negligence resulting in injury to property, see Pierce on American Railroad Law, pp. 311–315; and as to

liability for negligence resulting in injury to a human being, see pp. 469–476.

In one case ordinary care is required, as has been seen, and in the other the utmost care. The portion of the charge objected to, though in a case involving injury to property, requires of a railroad company the utmost care, and is there‑ fore erroneous.

The true rule in cases involving injury to property by rea‑ son of insufficiency of a culvert to pass extraordinary floods of water without obstruction, is that laid down in the cases of Pittsburg, Fort Wayne and Chicago Railroad Co. *v.* Gille‑ land and same company *v.* McClinton, 56 Penn., 445, to wit: that a railroad company is not bound to provide sufficient culverts to pass extraordinary floods, although not unprece‑ dented. In the facts of these cases and the case before the court there is a good deal of analogy, and we think the authority afforded by these cases conclusive of the correct‑ ness of our view: that a railroad company, in the construction of its culverts, is not required to provide against extraordinary floods where there is injury to property, and not to human beings. To procure the correction of the error in the por‑ tion of the charge on the subject of extraordinary floods, appellant asked the court to give the first, second, and sixth special charges to the jury. The gist of these charges is, that if appellant's road was constructed by legislative authority, and its culvert and embankment had been constructed in a skillful and scientific manner, and the culvert had capacity to carry off the water in the branch at all times except dur‑ ing extraordinary floods, and the flood that injured appellee's property was an extraordinary flood, and the jury was satis‑ fied from the evidence in the case of the truth of these facts, they would find for appellant — a railroad company not being · required, when built under a charter, to provide in the con‑ struction of its culverts against the effects of extraordinary floods.

These charges are, as we think, in harmony with the two

Pennsylvania cases on the subject of extraordinary floods, in cases of property, before referred to. They were fully warranted by the evidence in the case, and ought to have been given in charge to the jury. In a case like this, where the defense is that the injuries complained of were the result of backwater occasioned by an extraordinary flood, the question for the jury is, Was the flood doing the injury an extraordinary flood? The jury, therefore, had nothing to do with the question whether the appellant might not have provided in the construction of its culvert against the consequences of an extraordinary flood. It was not required to do so in this case, the injury being to property, according to the law laid down in the Pennsylvania cases, *supra.*    *   *   *

The eighth assignment of error is that the court erred in refusing to give the seventh special charge asked by appellant. That special charge is, substantially, that to entitle the appellee to recover he must, among other things, prove, as he had alleged, that the land overflowed was his property, and that he was not entitled to recover for damages sustained by property situated in a public street of the city of Tyler.

The assignment of error points out specifically why the court erred in refusing this charge. The reason assigned is, that there was evidence to show that a considerable portion of appellee's property alleged to have been overflowed and injured in consequence of the insufficiency of appellant's culvert was situated in two of the public streets of the city of Tyler, and no evidence that appellee had obtained permission of the municipal authorities of said city to place his property in said streets.

The ninth assignment of error specifically complains of error in the refusal of the court to give the third special charge asked by appellant. This charge was based upon the proposition, that if appellant had been guilty of a nuisance in the erection of its embankment and culvert, it was a legalized nuisance; and if appellee had erected portions of his mill buildings in two of the public streets of Tyler without

showing any right to do so, that he was likewise guilty of a nuisance, and therefore *in pari delicto* with appellant; and that unless he had shown that he had been injured by appellant's illegal or improper use of its nuisance he had no right to recover damages of appellant. This issue, we think, though not presented by a distinct special plea, is presented in that portion of appellant's answer in which it is asserted that appellant had legislative authority to construct its road, and that appellee's mill buildings were in the streets of the city of Tyler; and by the portion of appellee's pleadings in which appellant's embankment and culvert are stated to be a nuisance. This issue was, as has been seen, entirely ignored by the court in its charge. It was nevertheless an issue in the case, and not without evidence to support it.

The tenth assignment of error is that the court erred in refusing to give the special charges asked by appellant on the subject of contributory negligence. The fourth is, substantially, that if any article of machinery or other property was injured by being overflowed, and if by proper and timely care and attention the injury to the same could have been lessened or removed, it was appellee's duty to have given his said machinery and other property such attention, by himself or by his agent in charge of the same; and if appellee or his agent did not give proper attention to the preservation of the same, he is not entitled to recover a verdict for the consequences of his own negligence, but only what it would have cost to have given proper attention to the same. The evidence on this subject is that appellee's property was damaged by the flood of May, 1876; that it was overflowed, and that the water rose four feet eight inches high in his mill buildings above the bottom sills, and submerged a large portion of his machinery, tools and implements of his business, and material, and that it subsided by the next morning after the evening that it occurred; that it occurred on Saturday evening, May 6, 1876, and that on Monday morning thereafter the brother of appellee, who was in charge of the property

at the time, and himself a mechanic, with two other me-
chanics, examined the property and estimated the damages
done to it by the flood; that they found the floor of the mill
buildings covered with sand and water, and the machinery,
tools and implements of business, and material in a damaged
condition.    The testimony shows that the property continued
in its damaged condition, without any effort to clean and
repair it, and that it was susceptible of being repaired and
made almost quite as good as when new, but at a heavy
expense.

The law of contributory negligence clearly applies to such
a state of case as that described in the fourth special charge.
(See Shear. & Red. on Neg., sec. 598, and cases there refer-
red to.)

The fifth special charge is, substantially, that if appellee,
knowing that appellant's culvert was insufficient to pass off
the water of the branch, but would obstruct it, and cause it
to back and flood the adjacent ground, placed logs and cord-
wood in such positions that the rise of the water would float
the logs and cord-wood to the mouth of the culvert, and cause
it to form a drift there, by which the escape of the water was
largely retarded, and the flood increased to an extent causing
greater damage to the plaintiff than would otherwise have
occurred, such acts would constitute contributory negligence
on the part of appellee, and that the jury should not estimate
in their verdict any damages sustained by appellee under
such circumstances.

The evidence is that appellee knew from experience and
observation that whenever there were extraordinary floods
of rain the culvert under the city bridge became choked by
drift-wood.    It further shows that the bridge culvert emptied
the water into the railroad culvert, and that when the bridge
culvert was choked the railroad culvert, though capable, did
not discharge the quantity of water it otherwise would have
done; that a part of appellant's machinery was a saw-mill; that
his buildings were within a few feet of the edge of the branch,

22

and he had saw-logs, pieces of plank, slabs, and a plank fence near the branch, and a quantity of cord-wood not far from it. The evidence also shows that the railroad culvert was scientifically constructed, and had the capacity to carry off the water in the branch without obstruction, except during extraordinary floods; and that appellant always had the obstructions in the culverts removed after rains, and kept the culverts free therefrom.

We think the fifth special charge is in harmony with the general rule on the subject of contributory negligence laid down by Shearman & Redfield on Negligence, sec. 25, and the decisions there referred to in the notes. The rule is: "One who is injured by the mere negligence of another cannot recover at law or in equity any compensation for his injury, if he, by his own or his agent's ordinary negligence or willful wrong, proximately contributed to produce the injury of which he complains; so that but for his concurring and coöperating fault the injury would not have happened to him, except where the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former party is exposed, to use a proper degree of care to avoid injuring him." The appellee was certainly guilty of contributing to his own injury, by having his saw-logs, plank, slabs, cord-wood, and other material lying about the branch, where it would be easily floated by the first hard rain that came into the mouths of the culverts, and thus choke them up so as to force the water back on his premises; and after having seen this repeatedly done by floods previous to that of May, 1876, when he received the injuries to his property. And the evidence utterly fails to show that appellant was guilty of a want of proper care to avoid injuring appellee's property, after seeing that it was liable to be injured by the bridge culvert becoming obstructed during floods and forcing the water back on appellee's premises. We submit, therefore, that the court erred in refusing to give the fifth special charge asked by appellant.

The eighth special charge is, substantially, that if the proof shows that after defendant's embankment was constructed appellee extended his buildings in the direction of the branch, and placed his machinery therein, knowing at the time if he did so that appellant's culvert was too small to permit the water of the branch to pass off, and that the portion of the building so extended and the machinery so placed in the building would be injured, appellee would, by so acting with such knowledge, be guilty of contributory negligence, and not entitled to have any verdict against appellant for injuries sustained by reason thereof.

The testimony of appellee, W. S. Parker, shows that he extended his mill buildings towards the branch, and also on the east side towards the railroad embankment, after the embankment had been constructed, and that he knew at the time the railroad culvert was being constructed that it was too small to pass off without obstruction the water during heavy rains, or, at least, that he said he knew it. Was it not then, contributory negligence in appellant so to extend his buildings and place his machinery in them, when, in his own language, he knew the railroad culvert was too small to pass off the water without obstruction during heavy rains, and that the inevitable consequence would be that the water would be backed on his premises and his property injured, especially when he knew that the railroad had been built under legislative sanction, and, according to his own testimony, that the embankment and culvert had been scientifically and skillfully constructed? We think it was; and that the special charge refused is in strict accordance with the general rule in regard to contributory negligence quoted, *supra*, from Shearman & Redfield on Negligence; that it was warranted by the facts of the case; and that, therefore, the court erred in refusing to give it.

The tenth special charge is, substantially, as follows: That to entitle appellee to recover in this suit he must have shown from the evidence that he has not by negligence contributed

to his own injury; and if the jury believe from the evidence that, having reason to expect that floods would be produced by appellant's embankment which would overflow the floor of his buildings, and if knowing or having reason to believe this he permitted his tools to lie about on the floor of his buildings, or that he placed on the floor of his buildings scales, material, machinery, &c., not in use in said buildings, that it would be contributory negligence, and he would not be entitled to damages for injuries to such articles so situated.

The eleventh assignment is that the court erred in refusing to give the ninth special charge asked by defendant, and states specifically the grounds or reasons why the court so erred.

This charge was asked by appellant on the hypothesis that, to entitle appellee to recover damages of appellant in this suit, he must have shown by the evidence in the case that he was damaged by an unlawful obstruction of the water of the branch by appellant's embankment and culvert; but that if the evidence in the case showed that appellee's damage was occasioned by the mouth of the bridge culvert becoming obstructed by drift-wood, and that the bridge and its culvert were the property of the city of Tyler, and controlled by said city, that the city of Tyler, and not appellant, was responsible to appellee for injuries to his property by the water of the branch being forced back and made to overflow his premises, if any person was so responsible to him.

The evidence clearly shows that when appellee's premises were overflowed and his property damaged by the flood in May, 1876, the mouth of the bridge culvert was very much obstructed by logs, bridges, gates, planks, cord-wood, and various kinds of material that had been carried by the flood down the branch; and that in consequence of it the railroad culvert did not discharge the quantity of water, by a good deal, that it has the capacity to discharge.

The fourth assignment of error is that the court erred in submitting to the jury special issues; in not directing them

that if they found for the appellant they must say so by a general verdict, before finding under the special issues; but that, if they found for appellant, they must say so by a general verdict, and that in the latter event they should not consider the special issues at all.

The decision in the case of Darden *v.* Matthews, 22 Tex., 325, seems to support the view that in this case there should have been a general verdict for the appellee or for the appellant.

We think a general finding was necessary in this case, because the suit is for damages on account of injuries occasioned by a nuisance, and to abate the nuisance; and the evidence in the case shows the Houston and Great Northern Railroad to have been constructed under a charter granted by the State of Texas; and one of the principal defenses of appellant is that its culvert was constructed in the most skillful. manner, with capacity to discharge the water in the branch except during extraordinary floods of rain, and that appellant in its construction was not required to provide against such floods of rain.

The question of negligence in the construction of the culvert is, therefore, the fundamental question in the case. (Wood on Nuisances, pp. 136, 137, 533.)

So it seems to us that the court erred in not instructing the jury before considering the special issues to find either for appellee or for the appellant.

The fifth assignment is that the court erred in the mode of submitting special issues to the jury, in not submitting the facts necessary to establish the appellee's course of action, or the defenses of appellant under the issues joined, to the jury, and in not requiring the jury to find whether the facts thus submitted to them were true or false, so that the judgment of the court might be rendered for appellee or for appellant, according as the facts thus submitted to the jury might be found by them, instead of submitting to them the conclusions to be deduced from the facts, as was done. The jury, where

special issues are submitted to them, are required in their findings to declare the facts proved. (Paschal's Dig., art. 1469.) If this is required of the jury, ought not the court, in submitting special issues to the jury, to state plainly the facts that they are required to declare have been proved to them? We think so; and submit that the court erred in not so stating the facts to the jury that they are required to declare have been proved to them.

*Robertsons & Herndon* discussed carefully the facts, and cited Gray *v.* Harris, 107 Mass., 492; Mayor, &c., of New York *v.* Bailey, 2 Denio, 433; Angel on Water-Courses, sec. 336; Texas and Pacific Railroad Co. *v.* Murphy, 46 Tex., 356.

GOULD, ASSOCIATE JUSTICE. — Parker, the owner of mill buildings, with mill, gin, and machinery of various kinds, and of the lot in the city of Tyler on which they were situated, sued the railroad company for damages thereto and to his business, alleged to have been occasioned by an embankment and insufficient culvert erected across a branch, by reason whereof the water in the branch was obstructed and caused to overflow and damage said lot, mill, and machinery. In the answer defendant alleged that the culvert was constructed in the most skillful and scientific manner, with a capacity to carry off the water of the branch during ordinary freshets; that the premises of plaintiff had never been overflowed except during extraordinary floods of rain; and that for injury from such floods defendant was not responsible. The answer also states that "immediately above said culvert and across said branch the authorities of the city of Tyler, or some other persons to defendant unknown, have constructed from bank to bank a solid plank bridge, with an opening under the same, through which the water must pass before it reaches the culvert"; that the opening under said bridge was narrower and of less depth than the opening of the cul-

vert, and that therefore the bridge, during very heavy rains, caught drift-wood, obstructing the flow of water thereunder, and throwing it back towards plaintiff's premises. The answer charged plaintiff with various acts of contributory negligence, and also charged that his buildings were in part in the public streets of the city of Tyler, claiming that he was, therefore, himself guilty of a nuisance, and could not, for that reason, recover of defendant.

The evidence showed that previous to May 6, 1876, the water from the branch came into the plaintiff's mill several times; but on that day there was a very heavy rainfall, and the water of the branch was backed up by the embankment so that it was five or six feet deep in the mill, doing much damage. There was much evidence as to whether this was an extraordinary rain or not, most of the witnesses so designating it, although there was also evidence by some witnesses of other rains at Tyler as heavy or heavier. On behalf of the plaintiff, witnesses who knew the branch testified that they warned the engineer, when constructing the culvert, that it was insufficient. On the other hand, a scientific engineer who had examined the surface drained by the branch testified that the culvert was constructed "scientifically, properly, and correctly," and that its capacity to carry off ordinary rainfalls was ample. There was much evidence as to overflows of the branch before and after the embankment, as to contributory negligence on the part of the plaintiff, and as to drift caught by the bridge. The evidence is that this bridge was constructed when the culvert was made by the railroad hands, under the supervision of its engineer, for the convenience of the public and the railroad; the testimony of one witness being that it forms no part of the railroad, but is in the public street of the city, and, as he believed, belonged to the city.

The charge of the court was very full. In the outset the jury are told that the material issues for their consideration arose under the general denial and the defense of contribu-

tory negligence. After some general instructions, to the effect that plaintiff must prove that the damage was the proximate result of overflows caused by the embankment and defective culvert, and explaining that this means such result "as men of ordinary experience and sagacity could foresee would have happened in the natural order of things, under the peculiar surrounding circumstances," the court says: "The grant of power to the defendants to construct their railroad included the right to make such embankments as were proper for its prudent construction. It was the duty of the defendants to provide sufficient culverts through said embankment for the proper escape, so as to prevent any unnecessary injury to the adjacent land-owners, of such waters as would be occasioned by the ordinary rainfalls and freshets incident to the particular section of country in which they are constructed. They, however, were bound to provide against such damages only as could have reasonably been foreseen, and would not have been guilty of such culpable negligence as to make them responsible in damages if they failed to provide against such extraordinary floods and other accidental casualties as could not have been reasonably anticipated by men of the ordinary engineering skill and sagacity required in the prudent construction of such railroads generally." The defendant asked instructions to the effect that the railroad was not required to construct culverts of sufficient capacity to carry off extraordinary floods of water after an extraordinary rainfall.

Evidently the principal question in the case was that of negligence in the construction of the culvert. It was for the court to instruct the jury as to the law of negligence applicable to the case; that is, applicable to a case of injury to the property of an adjacent land-owner growing out of the manner in which the railroad was constructed. The charge as given embodies the correct rule, holding the railroad to the exercise of ordinary care, which would evidently require it to provide against ordinary rains, but not against such ex-

traordinary floods as could not reasonably be anticipated. (Shear. & Red. on Neg., sec. 445 ; Blyth *v.* Birmingham, 11 Ex., (H. & G.,) 781.)  Ordinary care is such care as is usually exercised under like circumstances by men of ordinary prudence in their own affairs.  It is but an attempt at a further explanation of this rule to say that it requires those floods to be guarded against which would by such men be foreseen and provided for.  If the court had given the charges asked it would have violated the rule laid down by this court in T. and P. R. R. Co. *v.* Murphy, 46 Tex., 356, that negligence, in the absence of a law—or, perhaps, it might be added, of a settled rule of law—defining the acts which constitute it, is a fact to be found by the jury.  It is true that counsel cite one case in which the court seem to recognize it as a rule of law that in the construction of culverts railroads are not bound to provide against extraordinary floods.  (Pittsburg, Fort Wayne and Chicago Railroad Co. *v.* Gilleland, 56 Penn., 445.)  It appears from another case in the same volume that the courts of Pennsylvania have adopted a different rule from that just stated as adopted by this court, and incline to make negligence a question of law instead of a question of fact. (Pittsburg and Connellsville Railroad Co. *v.* McClurg, 56 Penn., 294.)  Evidently, however, in the case cited by counsel, the court intends by extraordinary floods those which are so unusual that they could not be "expected"; for they say: "Being extraordinary, neither second nor third could be expected more than the first."  Thus understood, that case agrees with the charge as given.  But, without some further qualification, the expression "extraordinary flood" or "extraordinary rainfall" is indefinite, and conveys a meaning varying with the connection in which it is used.  What would be an extraordinary flood in one latitude might not be so in another.  Are floods extraordinary because they may not be expected annually ?  If not, how infrequent must be the recurrence to make them extraordinary ?  If once in two or three or five years such floods may be expect-

ed, are they so extraordinary that no provision would be made against them by men of ordinary prudence, no matter how large the amount of property endangered, or how certain its destruction when such floods do come? In the vicinity of a city, or elsewhere where a large amount of property is liable to be destroyed, are not railroads and individuals, in common prudence, called on to use precautions "in proportion to the extent of the injury which will be liable to result," and to provide against floods, although they do not ordinarily recur annually? (107 Mass., 492.) These are questions of fact for the jury, not of law for the court. For this reason, and for the further reason of its indefiniteness as a legal proposition, the court did not err in refusing the instruction asked. We think that this, the main issue in the case, was fairly submitted to the jury.

It is claimed that the court erred in telling the jury that the material issues for their consideration arose under the general denial and the defense of contributory negligence, thereby, it is said, withdrawing from the jury, amongst other issues raised by the pleas of defendant, the issue that the overflow was caused by a bridge constructed by the city of Tyler or by some one else. This defense was, we think, available under and embraced in the general denial. It did not confess and avoid the matters charged in the petition, but amounted to a denial that the overflow was caused by an insufficient culvert. The court charged that the plaintiff must prove that the " damage was occasioned, as the natural proximate legal result of overflows caused by the embankment and alleged defective culvert of defendants through the same, by reason of having been improperly constructed." If the jury believed that this overflow was caused by a bridge constructed by the city of Tyler or by some third person, they would, under this charge, find for defendant. The court did not err in that part of the charge, because the defense did arise under the general denial. But, whether it did or not, it devolved on the defendant to ask of the court such instruc-

tions as could properly direct the attention of the jury to this
issue.   The instruction asked by him on this subject is as fol-
lows: "That to entitle plaintiff to recover in this action, the
proof must show that his damage, if any has been sustained by
him, was occasioned by an unlawful obstruction of the water
of the branch by the embankment constructed by defendant
for its road-bed; and if the proof shows that the obstruction is
caused by a bridge on a public street of the city of Tyler,
occasioned by the collection of drift-wood by said bridge,
the defendant is not liable for such obstruction, unless the
proof shows that said road bridge is owned or controlled by
defendant for the purpose of operating its road-bed under its
charter; and defendant is not, unless it so owns and controls
said bridge, liable for any obstruction occasioned by said road
bridge, notwithstanding the said bridge may have been con-
structed by the hands who constructed the railroad, and
notwithstanding said bridge may have been paid for or con-
structed by or under the direction of Col. Noble, an engineer
of the railroad."   The substance of this charge is that the
railroad was not responsible on account of the bridge unless
they owned and controlled it.   As a legal proposition this is
not correct.   A person erecting a nuisance in a public street
is liable civilly for all the consequences.   (Wood on Nuisan-
ces, secs. 268, 269, 271.)   Again, "The fact that the injury
was caused by the joint negligence of the defendant and a
stranger is, of course, no defense."   (Shear. & Red. on Neg.,
sec. 46, citing Harrison *v.* Great Northern Railroad Co.,
3 Hurlst. & C., 231.)   If the bridge was erected by the rail-
road as a part of its culvert, although placed in a public
street, so that it would become the property of the city, the
railroad would not thereby be relieved from responsibility
therefor.   The court committed no error of law in refusing
the instruction asked, nor do we see any reason to believe that
the defendant suffered any substantial injury by the failure
of the court to call the attention of the jury to the issue as to
the bridge.   The evidence shows that it was constructed by

the railroad, connected immediately with the culvert, and might well be regarded as a prolongation thereof; and, further, that its opening is larger than that of the culvert proper, and its capacity to discharge water consequently greater, and the evidence fails to show that it increased the danger of the culvert becoming obstructed by catching drift-wood.

In regard to the defense that the plaintiff's mill was itself a nuisance, being in part on the street, we will only say that if, by reason of inaccurate measurement in laying off the city or subsequently, he was misled and placed his buildings so that they encroached five or six feet on the street,—or, rather, on the ground where by accurate admeasurement the street would have been,—such a mistake, if mistake it be, would not, of itself, deprive him of remedy in case of injury to his property, unless, as charged by the court, the plaintiff contributed to the injury "by placing his building on the public street."

The court charged the jury fully and correctly on the subject of contributory negligence, and did not err in refusing further charges on that subject asked by defendant.

The plaintiff sought damages for injuries done to his lot and buildings, for injuries to a large amount of machinery and other personal property, and for injuries to his business, by interruption thereof, caused by the overflow. The court instructed the jury as to the measure of damages under each of these heads, and, in obedience to instructions to that effect, they returned their verdict showing their finding on each ground, as follows: "We, the jury, find for the plaintiff as damages to his real property the sum of ($1,298) twelve hundred and ninety-eight dollars. We, the jury, find for the plaintiff as damages to his personal property the sum of ($1,587.50) one thousand five hundred and eighty-seven dollars and fifty cents. We, the jury, find for the plaintiff as damages to his business the sum of ($414.95) four hundred and fourteen dollars and ninety-five cents. N. C. Harris,

Foreman.   Total damages, $3,300.45.—N. C. Harris, Foreman."

Appellant treats this verdict as a finding on special issues, and objects that it is not a general verdict for the plaintiff, and that it does not declare the facts found by the jury under the special issues. We regard the verdict as a general verdict in favor of plaintiff, showing the amounts found under each head or distinct ground, and authorizing a judgment in favor of plaintiff for the aggregate sum. A corresponding practice in cases where exemplary as well as compensatory damages are claimed is quite common, and has not only not been deemed to vitiate the verdict, but has been commended for adoption.

We have not undertaken to discuss each assignment of error separately; but it is believed that we have disposed of the material questions raised thereby and discussed by counsel. As said by counsel, the fundamental question in the case was that of negligence. That was essentially a question of fact for the jury, and has been decided by them under a fair charge. The trial below appears to have been conducted with great deliberation and care, consuming over two weeks. Every possible defense appears to have been presented by counsel, and to have been urged, both there and here. The evidence is sufficient to support the verdict as to the general issue of negligence, and also as to the amount of damages found. Our opinion is that the record discloses no error authorizing us to reverse the judgment, and it is accordingly affirmed.

AFFIRMED.

[Justice Bonner did not sit in this case.]