# THE

# TEXAS LAW REPORTER.

AUSTIN, TEXAS, FEBRUARY, 1883.

## LICHTENSTEIN BROS. & CO. v. LOEWENSTEIN & ELIAS. .

### SUPREME COURT, GALVESTON TERM, 1883.

*Composition with Creditors—Avoidance of Agreement—Representations of Debtor.*—To entitle the creditors to avoid their agreement of compromise with the debtor, for fraudulent representations, it was necessary that their agent should have relied on the truth of the debtor's representations concerning the facts on which the compromise was based, and that said agent's action in accepting the offer of compromise was induced by such reliance.

*Same—Credibility of Witness—Judgment.*—The credibility of such agent's testimony on the whole subject, was the proper subject of the jury's consideration   It is not sufficient that the judgment does not clearly appear to be right, but it must clearly appear to be wrong, to authorize this court to set it aside.

Appeal from district court of Galveston county.—This suit was brought by appellants, who reside in New York City, against appellees who reside in Galveston, Texas, June 22, 1875, on four promissary notes aggregating $2,-634.55, subject to a credit of $790.36 and an attachment was run on nine cases of merchandise alleged to have been secreted in Houston, Texas, by appellees. Appellees answer that on the 18th of June, 1875, they had fully paid and satisfied the notes sued on, and had obtained from appellants a receipt in full of said notes, and an order on appellants' attorneys, to deliver up the notes, and they plead in reconvention for damages $20,000.

Plaintiffs amend their petition and replying to the plea of defendants alleges that they did compromise with defendants on the day mentioned in said plea, at thirty cents on

the dollar, and gave defendants a receipt in full for the debt and an order for the notes, but that they were induced to do so by the false and fraudulent representations of defendants at the time the settlement was made and which they found out after the settlement, and allege in said amendment the details of the settlement and of the fraud practiced upon them by appellees.

The appellees' motion to quash the attachment and their demurrer being overruled, the parties went to trial on the issue made by the pleading, and the verdict and judgment were for the appellees.

From this judgment plaintiffs appeal and assign as error :

1    That the verdict was contrary to the evidence, and

2.    That the court erred in not granting them a new trial on their motion for one.   Opinion by Walker, J. :

It is clear that the verdict of the jury is not contrary to the evidence.   Under the evidence the jury were authorized to judge of the circumstances testified to by the witnesses on both sides, and to determine whether the defendants had made the false and fraudulent representations imputed to them by the plaintiffs, and it was their province to judge of the credibility of the several witnesses, as well as to weigh all the evidence in the case.   The testimony introduced by the plaintiffs to establish the fraud, was in its nature circumstantial evidence, and the facts were of a character which admitted of an hypothesis consistent w th defendants' innocence of the charges made against thiem, as well as being of a character tending to implicate their honesty and the truthfulness of their representations.   If the transactions concerning the nine cases of merchandise alleged to have been fraudulently concealed, was a fair one that had occurred in due course of trade and *bona fide*, that condition of things was susceptible of proof by the testimony of those persons with whom the business had transpired.   Certain of them testified as witnesses in the case, and if their statements are to be credited, they established facts which warranted the jury in the conclusion that the nine cases of goods in question, were sold in the usual course of legitimate dealing, and that those goods were not secreted by plaintiffs as charged.   Besides to entitle the plaintiffs to avoid their agreement of compromise at thirty cents on the dollar it was necessary that their agent

should have relied on the truth of the defendants representations concerning the facts on which the compromise was based, and that his action in accepting the offer of thirty cents was induced by such reliance, and the credibility of said agent's testimony on the whole subject was the proper subject of the jury's consideration, and we are unable to say if they did not believe his evidence, that the verdict is wrong. It is not sufficient that the judgement does not clearly appear to be right, but it must clearly appear to be wrong, to authorize the appellate court to set it aside. (Jordan v. Imthurn, 51 Texas, 289; Briscoe v. Bronaugh, 1 Texas, 340; Ables v. Donley, 8 Texas, 331.)

In cases of disputed facts, and particularly where the issue is one of alleged fraud, the judgment will not be disturbed unless for some manifest error of law. (Mathis v Obertheir, 50 Texas, 330.)

The court has repeatedly held that a judgment will not be interfered with on appeal unless the court is able to say that it is without evidence to support it. (See Jordan v. Brophy, 41 Texas, 284; citing Bailey v. White, 13 Texas, 118; Gillard v. Chessney, 13 Texas, 337; McFarland v. Hall, 17 Texas, 690.)

The familiar rule applies to this case that where there is evidence sufficient to support the verdict, a new trial, in cases of conflicting testimony, will not be granted. (See Russell v. Mason, 8 Texas, 226 and Davidson v. Edgar, 5 Texas, 492.)

The supreme court will not grant a new trial merely because the weight of evidence preponderates against the verdict. (Mitchell v. Mason, 7 Tex., 3.) That the evidence is not satisfactory to the court is not sufficient; it is not enough that it is not clear that the verdict is right, but it must clearly appear that it is wrong to authorize a reversal on that ground. (Wells v. Barnett, 7 Tex., 584; Long v. Steiger, 8 Tex., 460; Briscoe v. Bronaugh, 1 Tex., 326; Gamage v. Trawick, 19 Tex., 64; see also George v. Lemon, 19 Tex., 152; Cummins v. Rice, 19 Tex., 226.)

When a question of fact has been fairly submitted to a jury on conflicting evidence, the supreme court will not disturb a judgment rendered in accordance with the verdict, although the evidence would have warranted a verdict on either side. (Montgomery v. Culton, 23 Tex., 156.) And

so too when there is evidence sufficient to warrant the verdict and a new trial is refused below, the supreme court will not reverse the judgment, even when where is much evidence tending to an opposite conclusion from that at which the jury arrived, and the court is not well satisfied with the correctness of the verdict. (Anderson v. Anderson, 23 Texas, 639.)

A careful consideration of all the evidence in the case refutes the assumption of the appellants' first assignment of error, and which is urged in the brief of their counsel to the effect that the evidence adduced by the plaintiff does not materially conflict with the defendants' evidence in respect to the question of alleged fraudulent representations.

It is maintained by appellants' counsel that the evidence of defendant Elias does not dispute the statements made by Behren, plaintiffs' agent, in his testimony as follows : That when the agreement to accept 30 cents on the dollar was agreed to, the defendants, in stating to him the condition of their affairs, said that they had made no cash sales, but had to sell their goods on time and could not collect ; and that they had on hand only about $6000.00 worth of stock. This statement of Behren goes beyond the allegations made by the plaintiffs in their petition respecting the facts to which he testifies. The petition, as amended, alleged "that said settlement was made on the representations of defendants to plaintiffs that they could not pay more than 30 cents on the dollar—that they had made the same proposition to all their creditors. Defendants represented that the small stock of goods then on hand was all they had ; they had not for several months sold any for cash, save some very insignificant orders, nor had they disposed secretly or fraudulently of any of their goods. That except the few cash orders filled as aforesaid, the other goods sold by them for the last several months had been sold for credit over the country, and the accounts were mostly uncollectable. That this was a full and fair statement, free from fraud, of their entire business, and that they could not pay the 30 cents but for the assistance of some riends."

The pleading, it is thus seen, does not pretend to charge, as Behren does in his testimony, that the defendants declared to him that they had made no cash sales. On the contrary, the fair implication is that at some indefinite pe-

riod in the then comparatively recent past—say, a few months, which might be two months or three months or more—they had been selling for cash ; and further, that ever since the period referred to, they had not wholly ceased to sell for cash, but had made some inconsiderable sales on cash terms. To the extent thus above exhibited, Behren's testimony is at variance with the allegations of the petition, in his statement of the attendant circumstances and conversations which led to the contract to take 30 cents. The grounds of fraud complained of under these alleged representations are that the defendants' falsely represented as respects their cash sales, and the amount of their stock ; charging in the amended petition that they had, "within a few weeks previous to said settlement with plaintiffs, made large sales of their goods to different persons in the state for cash."

Behren's testimony shows the the discovery of nine case, of goods which he supposed to belong to the defendantss and to have been concealed by them to defraud their creditors, at the time when the compromise terms of settlement were agreed to. If Behren's interpretation of the facts stated by him was correct, the fraud would have been established, and if Behren had relied upon, the false representation as to the goods on hand, it would have been sufficient to set aside the contract. But, testimony diametrically opposed to Behren supposed facts in regard to the ownership of the nine cases of goods was adduced by defendants, and the conflict of evidence on that point disposes of that branch of our inquiry. The evidence concerning it was conflicting, and sufficient to support a verdict that the goods were sold to one Pless, and were sold in due course of trade, and were not concealed by nor for the defendants.

Was there conflict of evidence between Behren's statement as to cash sales which had been made by defendants according to that witness' evidence? We think it clear from the statement of facts, that Elias' testimony gives a substantially differrent version of the material facts from that given by Behren, especially in respect to the matter most important to regard in our consideration of the case under the first assignment of errors. The evidence of Elias seems intended by the witness to contain a narrative of

what transpired between Behren and themselves, when the terms were agreed on between them.

Behren's testimony relates the conversation between the parties in a connection which makes the defendants offer as an inducement to the desired composition of the debt, the fact that they owned only $6000 worth of goods, and no money, because they had made no sales for cash. That when that statement was made, he, (Behren) demanded an explanation of the rumor of their having made large sales in San Antonio for cash. That then they gave him a little slip of paper showing sales for cash of less than $1000, and thereupon he accepted the offer of thirty cents on the dollar.

The testimony of Elias on the above matter is to the effect, that defendants told Behren that if he wished to know anything, they had no secrets from their creditors. That Behren said there were rumors afloat that they had been selling goods at auction at San Antonio, and that if they could explain these rumors satisfactorily, he would assist them. That they denied having so sold goods. That they told him they had sold to Oubault & Valmy, May, 1875, $714 on sixty days, and to Wright & Co., $880 at sixty days, and sold no goods for cash.

That on the 17th April, 1873, they sold to Ralph, Levy & Co., before they became embarrassed; sold also to defendant Loewenstein's brother, April 15, $1976, being indebted to him $5500, and also $1633, which sale was also previous to any embarrassment. That they offered to show Behren their books and gave him a memorandum of their sales (cash) they had made which amounted only to a few hundred dollars. That he (Behren) said "it was a good sale, and that we had made a good profit," that "he said he was satisfied and would take thirty cents and would assist us." The testimony of Elias conflicts with Behren's in many important particulars as well as in minor details. It tends to establish the fact that it was Behren who instituted an enquiry as to the fact of sales at auction in San Antonio, instead of the defendants voluntary offering, as an inducement to plaintiffs, the statement imputed to them, as to having made no cash sales; and that the statements made concerning the cash sales, were merely incidental responses which were immaterial to the enquiry made by Behren, ex-

cept so far as they related to the main query as to auction sales at San Antonio by defendants.

The facts stated by Elias show that the apprehensions of Behren had been awakened by the rumor of the defendants having taken their goods to a distant point, selling them to the highest bidder, thereby acting so as to excite suspicion by thus dealing in a mode out of the ordinary course of legitimate trade, and that the matter of sales for cash in the regular course of business was not the subject of enquiry nor conversation, and therefore that the defendants' answer concerning cash sales, was relating to auction sales at San Antonio. This evidence tends to show that the witness Behren did not rely upon, and was not influenced to accept defendants' proposition by reason of any statement made by them concerning the amount of sales for cash or otherwise. It tends to show that Behren was acting upon the impressions which were agitating his mind in respect to rumors as to the defendants' supposed irregular mode of transacting business by removal of goods and their sale at auction at San Antonio and not upon the question as to how much cash the defendants may have been possessed of or had realized from sales made in the ordinary course of trade by defendants.

The evidence, therefore, admitting of views leading to opposite conclusions respecting the issues in the case, must be regarded as conflicting evidence ; and being so, the assignment that the verdict, if it is against the plaintiffs' evidence, is not therefore supported by any, is not well taken ; we cannot agree with counsel that the witness' (Behren) statements are not in conflict with the evidence for the defense.

. Behren testified that he had heard before the attachment issued that defendants had secreted their property, and that they had had others good stored on Commerce street, Houston, which were claimed by the brother of defendant Loewenstein. He also testified to an experience of twenty years as a traveling commercial agent, "and was not very easily overreached."

The burden of proof was upon the plaintiff to establish the alleged fraud by evidence—fraud is never presumed—and if under the conflicts which occurred in the testimony of Behren and Elias or from discrepancies or inconsistencies

in Behren's evidence, the jury failed to give credit to his testimony, it may well be supposed that they may not have believed that he did in fact, after hearing of the defendants secreting this property, as he says he did, and being sagacious and difficult to overreach, rely at all upon any of the alleged false representations of fact made by the defendants, but that he acted upon what appeared to be the best interest of his principals in accepting thirty cents on the dollar, irrespective of the statements of the defendants.

The verdict is entitled to be supported by whatever rational view of the evidence the case before the jury allows of, and it is for that reason we have indulged in this lengthy discussion of the testimony, and in the foregoing hypothetical views as to the construction which the evidence admits of. Applying the rules of law which we have before cited to this case we conclude that the judgment ought to be affirmed.

The report of the commissioners of appeals examined and approved, and the judgment of the court below affirmed.