GULF, COLORADO & SANTA FE RAILWAY COMPANY v. LAWRENCE STEELE.

Decided May 26, 1902.

**1.—Railway Company—Obstructing Stream—Statute Construed.**

Where a railway embankment, for want of sufficient culverts and openings, caused the overflow waters of a river, which would otherwise have passed off in natural channels, to flow onto and remain on plaintiff's land, the railway company was liable for the injury occasioned thereby, and articles 4436, 4426, Revised Statutes, do not determine the liability in such case.

**2.—Same—Common Law Rule.**

Obstructing the waters of a running stream to another's hurt renders the party so doing responsible in damages therefor; and the statutory provisions in reference to the construction of railways across streams and water courses do not change the rule.

**3.—Evidence—Expert Testimony.**

It was competent for a witness who was not an expert, nor a civil engineer, to testify that there were depressions in plaintiff's land which the culverts in a railway embankment did not drain, and for which no openings were provided, since this did not involve matters of scientific knowledge.

Appeal from Brazos. Tried below before Hon. J. C. Scott.

*F. J. & R. C. Duff* and *J. W. Terry,* for appellant.

*Doremus & Butler* and *Ed. Scott,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee, Lawrence Steele, against the appellant to recover the value of a crop of growing cotton alleged to have been destroyed by the negligence of appellant in so constructing its roadbed and embankments as to cause water to overflow and stand thereon. A trial by jury resulted in a verdict and judgment for appellee for $2300, from which the railway company has appealed. In his pleadings appellee states his cause of action as follows:

"3. That prior to the construction of said railroad by the defendant, the said tract of land was owned and cultivated by the plaintiff, as

aforesaid, was well drained by natural channels and low places and depressions thereon, and water thereon from all sources whatsoever passed through said channels, depressions, and low places, and escaped from said land without overflowing or injuring the crops growing thereon, and crops thereon were not liable to injury from overflows of high water.

"4.   That the defendant carelessly and negligently constructed its line of roadbed across plaintiff's said land and other land near plaintiff's land, and carelessly and negligently threw up and built embankments, and constructed its roadbed several feet higher than the land adjoining thereto, and several feet higher than plaintiff's said land, and the defendant carelessly and negligently and unskillfully built and constructed its roadbed and embankments over and across the natural channels and depressions by which the plaintiff's lands were drained of water as aforesaid, and negligently and carelessly filled up and obstructed the natural channels and depressions for the escape of the water from said land, and carelessly and negligently and unskillfully failed to provide and construct suitable and sufficient culverts, bridges, or other means of escape from said lands of such collections of water as might have been reasonably anticipated would collect on same, and as did, in fact, collect on same, as hereinafter alleged.

"5.   That during the spring of 1900, to wit, during the months of ————, of said year, Big Creek, a stream situated above and north of the said roadbed of defendant, and upon which plaintiff's said land is situated, overflowed its banks in the low places thereon, and the waters from said creek passed into the low places, channels, and depressions in plaintiff's said land and other lands adjacent thereto, through which it passed down to said roadbed and embankment, when it was thereby stopped, dammed up, and forced back on and overflowed plaintiff's said land, and upon which plaintiff then had a crop of cotton standing and growing, and the water thus dammed up and held back on plaintiff's land as aforesaid, overflowed, drowned out, and entirely destroyed 460 acres of plaintiff's said crop of cotton, which 460 acres was in cotton, all of which was of the reasonable market value of $10 per acre, to plaintiff's damage $4600.

"Plaintiff further alleges that prior to the construction of said railroad by the defendant, Big Creek, a local stream running near the Brazos River, and upon which plaintiff's said land was situated, as aforesaid, was of sufficient size and capacity to hold all waters therein, from local rains, etc.   That water therefrom which overflowed the banks of said stream, except in low places, run into said creek from adjacent lands, and the water thus escaping from said creek run through such sluices and low places, and did not overflow the lands through which they run, and crops on said lands were not overflowed or injured, and not liable to injury from water overflowing same.   That the said defendant carelessly and negligently constructed its roadbed west of Allenfarm, in Brazos County, Texas, and near to the Brazos River, and carelessly and negligently threw up and built an embankment and constructed its roadbed

several feet higher than the lands adjacent thereto, and carelessly and negligently filled up and obstructed the natural channels and depressions in said lands for the escape of water therefrom, and carelessly and negligently failed to provide and construct suitable and sufficient culverts, sluices, or other means for water to escape from and run off of the above said roadbed. That during the spring of 1900, and about the months of April and May of said year, the waters in the Brazos River overflowed the banks of said stream at low places therein above said railroad company's embankment, and were by said embankment dammed up and forced back over the country above said railroad, and were thereby forced into said Big Creek, causing same to rise and overflow the lands of plaintiff, upon which plaintiff then had growing a crop of cotton, and 460 acres of plaintiff's said crop were overflowed, drowned out, and destroyed, to plaintiff's damage $4600, as before alleged."

Appellant answered by exceptions general and special, by general denial, and an averment that the flood or overflow was of such a character as could not have been reasonably foreseen and provided against. Other special defenses were also pleaded, but in view of the points presented in the brief need not be set out here.

Plaintiff was the owner of the land described in his petition, and in the spring of the year 1900 had growing thereon a crop of cotton. This land was situated near the Brazos River and adjoined Big Creek, a tributary thereof. In the spring of the year named the Brazos River and Big Creek overflowed their banks. Their waters spread out over adjacent lands, including plaintiff's, destroying the crops thereon and damaging plaintiff in the amount found by the jury.

Many years prior to the date named above the defendant had constructed its line of railway over and across the land of plaintiff and lands adjacent thereto. It ran immediately south of the land on which the crop was destroyed, the crop being between the railroad and Big Creek. Proceeding past that point the road ran near the Brazos River. Plaintiff's lands and those adjacent were bottom lands. The embankment of the railroad was higher than the lands, so that unless suitable culverts and bridges were placed wherever the lay of the land required, the embankment would hold, in the depressions thereon, such water as came upon it whether from overflow or from local rains. It would also retard the flow of the flood waters of the Brazos River. Some of these depressions or natural drains tended in the direction of the channel of Big Creek, others toward the Brazos River, and these latter are the ones which plaintiff claims were obstructed to his injury.

The evidence is sufficient to sustain the finding that the openings in and through the railroad embankment were not sufficient in number and in size to drain the plaintiff's land of the overflow waters as it naturally drained itself before the construction of the road, and that the overflow waters from the Brazos River which would otherwise have flowed off through the natural channels and depressions in the land were thus caused to flow on to plaintiff's land and to remain thereon, causing the

injury complained of, and that the faulty construction of defendants road as it approached the Brazos River adjacent to plaintiff's land caused the river to back its waters into Big Creek, causing the overflow of the latter stream, and that the defendant was negligent in the respects complained of.

Appellant contends in its propositions under its first four assignments of error that article 4436 of the Revised Statutes abrogated the common law rule as to damage occasioned by the obstruction of the natural flow of surface water and established a new rule in its stead. That the article in question applies only to surface waters, and as the water occasioning the damage complained of was not of that character, but was overflow water from large streams, the company can not be held liable under the statute in question. On the same theory it is contended that the exceptions urged against the petition and presenting the same questions should have been sustained.

It is contended also that the rights of plaintiff rest upon the article last mentioned and article 4426, and he can have no cause of action except for a breach of the duties imposed by one or both of said articles. The article in question is as follows: "In no case shall any railroad company construct any roadbed without first constructing the necessary culverts or sluices, as the natural lay of the land may require, for the necessary drainage thereof."

Article 4426 is as follows: "Such corporation shall have the right to construct its road across or along any stream, watercourse, street, highway, or canal which the route of the railroad may intersect or touch, but such corporation shall restore such stream or watercourse to its former state or to such a state as not to unnecessarily impair its usefulness."

It may be true, as contended by appellant, that article 4436 prescribes the duty of the railway company only with reference to surface water due to local rains as contradistinguished from waters of overflowing streams. It seems to have been so held in Railway v. Helsley, 62 Texas, 593, though the distinction was not called for in that case, and in many other Texas cases which might be cited the article has been applied to cases in which damages were asked against railway companies for so constructing their lines as to obstruct the waters of running streams in times of high water. However, it has been held that water resulting from an overflow in districts where large bodies of land are thereby covered will be treated as surface water and the rights of persons affected thereby will be determined accordingly. 28 Enc. of Law, old ed., p. 965.

But it occurs to us that the right of the plaintiff to recover in this case does not depend upon the article in question, nor indeed upon article 4426, quoted above. It will be observed that the article last named clothes railway companies with the power to construct their lines across streams, watercourses, canals, and public roads and streets, imposing the condition that the usefulness of such streams or highways shall not be

unnecessarily impaired   Hence a railway company has the right to bridge a navigable stream   To some extent this necessarily impairs the right of convenient navigation.   But if the company constructs a draw to permit the passage of vessels, its usefulness is not unnecessarily impaired.   So with a street crossing or a bridge over a canal.   The article seems to us to have no reference to the flow of the water in a stream, but rather to the extent to which its use may be affected.   Take the case at bar.   The plaintiff's land did not lie on the Brazos River.   The existence of that stream may have been of no possible use to plaintiff, but merely a source of apprehension and harm from the damage wrought by its waters in time of flood.   Now if the company had so constructed its crossing as to obstruct the free flow of the waters and had thereby caused the stream to overflow and damage plaintiff's land, the usefulness of the stream can not be said to have been affected.   It is simply turned into an instrument of harm.   In such a case the right of the injured party would rest upon a broader basis than the article quoted, for it seems to be held in all jurisdictions that one who obstructs the waters of a running stream to another's hurt is responsible in damages therefor.   Railway v. Parker, 50 Texas, 346; 28 Enc. of Law, old ed., pp. 955, 961, 963, 966, 967, 968; Gould on Waters, secs. 256, 264, 548.

To show that this article has reference rather to the right of the public to the use of streams, canals, and highways, roads and streets are mentioned in the same connection and the same provision is made that their usefulness shall not be unnecessarily impaired.   We have found no case in which article 4426 has been thus construed, the cases arising thereunder usually involving the unnecessary impairment of the usefulness of some public street or highway, and in cases involving damage from overflow caused by railway companies in constructing their lines across or along streams without providing sufficient outlets for such volumes of water as they might reasonably foresee and provide against, article 4463, supra, has been uniformly applied.   It is true, however, that the point here urged as to the distinction between surface water due to local rains and the water brought down from above by the streams has not heretofore been presented.

An inspection of the petition shows that plaintiff set up the facts upon which he relied for recovery.   That among the allegations are found averments that the overflow was due to the negligent construction of the road as it approached the river.   That the embankments along plaintiff's lands and those adjoining were not provided with sufficient culverts and sluices and the waters were thereby backed up and held upon his lands.   With these allegations present we think it immaterial whether the petition brings the case strictly within the provisions of either of the articles quoted.   The court did not err in overruling the exceptions.

Under the fifth assignment appellant complains of the refusal of the trial court to strike out the testimony of the witness James Love.   This witness on direct examination qualified as an expert, and testified that

he had inspected the land in question and the culverts and sluices in the embankment along this land. He gave the width of the culverts found there and stated that they were sufficient for the depressions drained by them, but he testified to the presence of other depressions not provided with culverts and which were not drained by the culverts mentioned. In testifying to the depressions not provided with culverts he expressed an opinion as to the width of culvert which would have been necessary. On cross-examination he was shown not to be qualified as an expert civil engineer, and thereupon appellant requested the court to strike out his testimony. To the refusal to do this the assignment is addressed.

Without regard to whether the witness was shown to be an expert, we think the action of the trial court if error was harmless. The witness did not say in his testimony as cited in the brief that the culverts found were insufficient for the depressions they were designed to drain. He stated, however, that there were other depressions not drained by these and for which no culverts were provided. Such testimony might be supplied by any witness having knowledge of the facts, and did not involve matters of scientific knowledge. The assignment can not be sustained.

The refusal of the trial court to give several requested charges is complained of. Most of these present the appellant's contention as to surface water and the scope of the articles of the statute, which we have already disposed of. We need not discuss them in detail. The substance of the others is fully given either in the main charge or in special charges given at the request of the parties.

Under the fourteenth and sixteenth assignments portions of the charge are assailed, the complaint being that the duty of railway companies to use reasonable care to provide against usual and expected floods is not accurately defined. The portions of the charge standing alone might prove misleading, but the charge as a whole fully protects the appellant, and in the light of the entire charge we do not think the jury could possibly have been misled. None of the other assignments require our notice.

Because no harmful error has been presented, the judgment is affirmed.

*Affirmed.*