TEXAS & ST. LOUIS R. R. Co. v. JOSEPHUS YOUNG.

(Case No. 1530.)

1. NEGLIGENCE — RAILWAY COMPANY, DUTY OF AS TO CATTLE-GUARDS.— As a general rule, it is the duty of a party to protect himself from the injurious consequences of the wrongful acts of another, if he can do so by ordinary effort and care, or at a moderate expense, for which he may charge the wrong-doer; and where by the use of such remedies he can prevent loss, he can only recover for such loss as could not be thus prevented.

2. SAME.— But to this rule there are exceptions; as where a railway company, by the construction of defective cattle-guards, jeopardizes the growing crops of a farmer, there is no obligation on the latter, who is not presumed to be skilled in such work, to assume the risk of having the defect corrected, or of exercising his judgment to select some one skilled in such work to do it for him. In such case, the farmer through whose inclosure the road runs may leave the whole matter of constructing and repairing stock-guards in the hands of the company, which has impliedly contracted to perform the work, and he is not chargeable with contributory negligence if damage shall result from his not attempting to repair the defect.

3. SAME — STATUTE CONSTRUED.— The statute (R. S., 4243) which authorizes the owner of the land to construct or repair cattle-guards is not obligatory, but permissive only, and does not qualify or impair the obligation imposed on the railway company, whose road-bed crosses the inclosed lands of another, to construct and keep cattle-guards in proper repair.

4. DISTINGUISHED.— This case distinguished from Loker v. Damon, 17 Pick., 288.

5. MEASURE OF DAMAGES.— The proper measure of damages for destruction of growing crops is their value at the time of their destruction. Following Sabine & E. T. R'y Co. v. Joachimi, 58 Tex., 456.

6. CASE DISCUSSED.— Ward v. Paducah R. R. Co., 4 Fed. Reporter, 862, discussed and distinguished from this case.

APPEAL from Titus. Tried below before the Hon. B. F. Estes.

*H. M. Whitaker* and *Chas. T. Bonner*, for appellant.

No briefs on file for appellee.

STAYTON, ASSOCIATE JUSTICE.— The statutes of this state make it the duty of a railway company to erect and keep in repair all necessary cattle-guards, at all places at which a railway enters an inclosure, sufficient to protect everything therein from the depredations of stock of every description; and they also provide that, in case of the failure of any railway company so to construct and keep in repair such cattle-guards, such company shall be liable to any person injured by such neglect for all damages that may result therefrom. R. S., 4240–4244.

The statutes also give to the owner of any inclosure the right to construct or repair such cattle-guards at the expense of a railway company, if it fails to do so. R. S., 4243.

That the crops of the appellee were destroyed by stock which entered through cattle-guards which the appellant only completed so far as to enable it to operate its trains, but not so fully as to prevent the passage of stock through them, is well established by the evidence, and that they had been in that condition for a considerable time is also shown.

It is claimed that, although it is the duty of a railway company to erect and keep in good order all necessary cattle-guards, and that for a failure to do so it becomes liable for any damage which may result from such neglect, yet that a railway company is not liable for such injury if the owner of the inclosed lands fails to construct or repair such cattle-guards, as the statutes permit him to do. That his failure is contributory negligence, which will preclude a recovery by him.

The general rule is thus stated: "It is the duty of a party to protect himself from the injurious consequences of the wrongful act of another, if he can do so by ordinary effort and care, or at a moderate expense, for which effort and expense he may charge the wrongdoer. And where by the use of such means he may prevent loss, he can only recover for such loss as could not thus be prevented." Field's Law of Damages, 21.

The determination of this question depends upon whether or not, under all the facts and circumstances in proof, the appellee used ordinary care; for if he used such degree of care, he cannot be said to have contributed to produce the injury of which he complains, and of which it cannot be denied that the negligence of the appellant was the proximate cause. Shearman & Redfield on Negligence, 25.

Railway companies pursue a public employment in the careful exercise of which, in the proper construction and maintenance of their roads, the public is deeply interested; for upon this largely depends the safety of lives and property transported by them. To enable them so to prosecute their business they are given powers not given to persons engaged in business not public, through which they are enabled to appropriate and exclusively control their roadways. Those who undertake to construct and operate railways do so voluntarily, and they undertake for a degree of skill and knowledge in the business, and in the selection of agents, equal to the importance and risks incident to the business, and also that such skill shall be faithfully exercised.

The construction of railways is a business not of common knowledge, but to a large extent of professional skill. What may be done

with safety to or about a railway track may not, even in the construction or repair of a cattle-guard, be known to a person with no experience or knowledge in reference to railway construction. Such being true, can it be said that the failure of a farmer, through whose farm a railway runs, to construct or repair a cattle-guard, which the company is charged by law, and its own voluntary undertaking, with the duty of repairing or constructing, is a failure to use ordinary care?

If, in attempting to construct or repair a cattle-guard, a farmer unskilled in the business should improperly perform the work, he would be responsible in damages which might result therefrom; he having voluntarily undertaken the work, could not claim exemption.

If such person voluntarily undertakes to employ another to perform the work, the necessity of judging of the capacity of the person employed is cast upon him, as well as the responsibility for injury resulting from the defective execution of the work; for, in each case, he impliedly undertakes for sufficient skill in himself, or the person selected to properly do the work which he voluntarily undertakes.

We are of the opinion that the exercise of ordinary care does not impose upon any one the necessity of assuming such a risk, by having the work done under his own supervision, nor by exercising his judgment in the selection of a person skilled in railway construction to supervise or do the work; and that a person through whose inclosure a railway runs may leave the whole matter of constructing and repairing stock-guards in the hands of those who have voluntarily assumed the duty, and have impliedly contracted to perform it, without being chargeable with contributory negligence.

This is not a case in which the owner of property, used in no public or dangerous employment, has failed to repair a known defect therein, caused by the wrong or negligence of another, which might have been easily repaired, and thereby a threatened injury avoided, as was the case supposed in Loker v. Damon, 17 Pick., 288.

The right of the appellee to enter upon the appellant's roadway, and in any manner to interfere with it, is only a permissive right given by the statute, without which an interference by him would be a trespass, which he may exercise or not at his option, without liability to be charged with contributory negligence, if he elects not to exercise it.

Considering the dangerous character of the business of maintaining and operating railways, the high degree of care necessary therein, and the importance of such companies having the exclusive control of their roadways and their construction, it would seem that

they should not be relieved from liability arising from neglect of a duty imposed by statute, in reference to their roadways, in any case, under the plea that the party injured by their neglect might have done that which the statute declares shall be performed by such companies, and which they have impliedly contracted to perform.

The facts in this case justified the court below in holding that there was no such negligence of the appellee shown as would preclude a recovery by him. The case of Ward v. Paducah R. R. Co., 4 Fed. Reporter, 862, upon which appellants rely, contains no contrary ruling, but simply holds that, in the absence of statutory duty resting on a railway to construct cattle-guards, it is the duty of a farmer to use ordinary care to avoid injury which may result to him by the failure of a railway company to construct them. An improper measure of damage, however, was applied.

The court below gave judgment for the value of the crops which probably would have been raised on the farm had the crops not been destroyed before maturity, the value of similar products being made the basis, and the probable yield estimated from opinions of witnesses. This was error. The true measure of damages was the value of the crops at the time they were destroyed. Sabine & E. T. R'y Co. v. Joachimi, 58 Tex., 456.

In arriving at that, from the very nature of the question, great liberality in making proof must be allowed, and even the opinions of witnesses qualified by experience to speak upon the subject would be admissible. 1 Wharton on Evidence, 447, 448; 1 Greenleaf, 440, note. But at last the question is, what was the value of the property at the time it was destroyed?

That the value of the probable yield at the time the crop would have matured and been gathered is not the true measure is evident, for at any stage in the growth of a crop it requires labor to cultivate and gather it, more or less, as the crop may be advanced, and these elements go into the make-up of the value at maturity. If the crop be destroyed before maturity the labor of the farmer is not further directed to it, and he is free to embark in other profitable employment. To give the value of a matured and gathered crop would be to give compensation for labor never performed, and for an injury never received.

The record does not contain sufficient evidence to enable this court to render such a judgment as would be just to both parties, and for the error indicated the judgment will be reversed and the cause remanded.

Reversed and remanded.

[Opinion delivered October 20, 1883.]