BARSTOW IRRIGATION COMPANY v. E. M. BLACK ET AL.

Decided April 12, 1905.

**1.—Injury from Overflow—Pleading—Issue of Negligence Raised.**

Where in an action for injury to land and crops from the overflow of surface water caused by the construction of an embankment it was alleged that the natural flow of water had been obstructed by the embankment and that a ditch with culvert constructed through the embankment, designed to carry off the water, was not large enough for that purpose during times of freshets, and that the water had no other outlet, this was sufficient to raise the issue of an improper construction of the ditch in that it was not sufficient to carry off the water.

**2.—Same—Minimizing Injury—Trespass.**

Where after plaintiff's land and crops had been overflowed for several days by reason of defendant's negligence in the construction of its embankment, they cut the embankment and thus drained the land, defendant could not defeat any part of the liability on the ground that plaintiffs should have sooner done the cutting and thus prevented the damage, since they were not required to commit a trespass in order to protect or relieve themselves from injury resulting from the act of a wrongdoer.

**3.—Same—Irrigation Company—Liability—Skilled Engineers.**

The defendant irrigation company having failed in its duty to so construct its canal, ditches and embankment as not to cause injury to adjacent landowners by the accumulation of water during ordinary rainfalls, it was liable for the damage resulting therefrom, no matter how learned and skillful may have been the civil engineers it employed in the construction work.

**4.—Assignment of Error—Statement of Facts.**

An assignment of error to the exclusion of certain evidence fails where the agreed statement of facts shows that the evidence was admitted.

**5.—Same—Rebuttal Evidence—Harmless Error.**

An assignment complaining of the admission of certain irrelevant evidence is not well taken where such evidence was in rebuttal of other evidence on the same point drawn out by the other party, and it does not appear that it could have been detrimental.

*T. J. Hefner* and *Jas. F. Ross,* for appellant.—1. It is the duty of one injured by tort to make a reasonable effort to avoid damages therefrom, even to the extent of making reasonable expenditure of money to such end, provided it can be done without detriment to the property of others than the wrongdoer. A. & N. W. Ry. Co. v. Anderson, 85 Texas, 88; Jones v. George, 61 Texas, 345; Galveston, H. & S. A. Ry. Co. v. Becht, 21 S. W. Rep., 971; 8 Am. & Eng. Ency. of Law (2d ed.), pp. 605, 606, and cases cited; 13 Am. & Eng. Ency. of Law (2d ed.), p. 714, and cases cited.

2. Irrigation companies are liable in damages only when negligent in the construction and maintenance of their ditches, embankments, culverts, etc., and are only required to use such degree of care and prudence as an ordinarily discreet and cautious man would exercise in a like business or undertaking. H. & G. N. R. R. Co. v. Parker, 50 Texas, 330; Gulf, C. & S. F. Ry. Co. v. Holliday, 65 Texas, 512; Gulf, C. & S. F. Ry. Co. v. Pomeroy, 67 Texas, 498; Gulf, C. & S. F. Ry. Co. v. Pool, 70 Texas, 713; King v. Miles City Irrig. Ditch Co. (Mont.), 41

Pac. Rep., 431; 13 Am. & Eng. Ency. of Law (2d ed.), 699, and cases cited; 13 Am. & Eng. Ency. of Law (2d ed.), 688, and cases cited; 17 Am. & Eng. Ency. of Law (2d ed.), 512, and cases cited; Long on Irrigation, sec. 96, p. 126, and cases cited.

*A. J. Wilson* and *J. E. Starley,* for appellees.—1. Where an irrigation corporation builds upon its right of way an irrigation canal with embankments, in such a manner as to cause surface water to overflow the farm of another adjoining same, such adjoining owner is not required nor authorized to enter upon such right of way and cut the embankment to avoid damage to himself. Gulf, etc., Ry. Co. v. Reed, 22 S. W. Rep., 283; 8 Am. & Eng. Ency. of Law (2d ed.), p. 607.

2. One who, by constructing an embankment, causes another's property to be overflowed, knowing such fact, can not stand by, and allowing the cause of the injury to continue, and maintaining same, and then excuse himself from liability because of the failure of the injured party to avoid the injury. The doctrine of contributory negligence does not apply. Long on Irrigation, sec. 70, p. 128; 17 Am. & Eng. Ency. of Law (2d ed.), p. 513.

3. If, in the construction of its canal embankments, an irrigation company fails to provide such culverts and sluiceways as the natural lay of the land demands, and thereby causes surface and surplus waters to back up and overflow the lands of another to his damage, such canal company is responsible in damages for the injury. H. & G. N. Ry. Co. v. Parker, 50 Texas, 330; Railway Co. v. Halloren, 53 Texas, 46; Gulf, C. & S. F. Ry. Co. v. Helsley, 62 Texas, 593; Bonner v. Wingate, 14 S. W. Rep., 790; Texas & P. Ry. Co. v. O'Mahoney, 50 S. W. Rep., 1049; San Antonio & A. P. Ry. Co. v. Kiersey, 81 S. W. Rep., 1045; 17 Am. & Eng. Ency. of Law (2d ed.), p. 512.

4. The law required the appellant, in the construction and maintenance of its canal and embankment, to guard against all such floods as might be anticipated, though some of them might be extraordinary and unusual. Texas & P. Ry. Co. v. Whitaker, 82 S. W. Rep., 1051; Missouri, K. & T. Ry. Co. v. Davidson, 1 Texas Ct. Rep., 338; Railway Co. v. Pomeroy, 67 Texas, 498; Sabine & E. T. Ry. Co. v. Hadnot, 4 S. W. Rep., 138; Gulf, C. & S. F. Ry. Co. v. Nicholson, 25 S. W. Rep., 54; H. & G. N. Ry. Co. v. Parker, 50 S. W. Rep., 330; Gulf, C. & S. F. Ry. Co. v. Holliday, 65 Texas, 513.

Fly, Associate Justice.—This suit was instituted by E. M. Black and J. C. Summers against appellant to recover damages arising from injury to crops by water which was forced thereon by the faulty construction of an irrigation plant owned by appellant. It was alleged that Black owned the land and Summers was his tenant, the latter getting three-fourths of the crops raised on the land. It was alleged in the petition: "That the defendant built, owned and maintained an irrigation canal with high embankments on each side, the top of said embankment being about four feet above the level of the ground. Said canal and embankment was and is about twenty yards west and south of plaintiffs' said premises and crops, and extend down on the west side and

across the south end of said 80 acres of land, and for a long distance on each side.

"That there is, and has been for years, a natural water drain and channel crossing said land; said natural water drain and channel extend up the Pecos River Valley in a northwesternly direction on the east side of the Pecos River, and for about six or seven miles above plaintiffs' said land. Said natural water drain and channel have for years drained a large scope of land of its surplus surface and rain waters, and said waters have naturally flown and run down said natural water drain and channel past and below plaintiffs' said land. That the aforesaid canal and embankment were built, and have been maintained, by defendant, along the plaintiffs' said land and across the said natural water drain and channel. That the defendant dug and constructed a ditch along the course of said water drain and channel for about three miles above the place where the said canal and embankment was constructed across said natural water drain and channel. Said ditch accelerated the flow of said surface water, and drained much of the land along its course of other waters that the natural watercourse did not drain, and said ditch carried the water to the place where the said canal and embankment was constructed across said natural water drain and channel.

"That, near the place where the said canal and embankment cross the said drain and channel, and where said ditch crosses same, the defendant constructed under said canal and embankment a small culvert, which said culvert was not, and has never been, more than sufficient to carry the usual and ordinary flow of water in said ditch, and being wholly insufficient to carry the surplus and surface waters during times of freshets. And, except for said culvert, the defendant entirely dammed and obstructed said water drain and channel, and said ditch, with the said canal and embankments. That the land drained by the said water drain, channel and ditch, has been visited at various intervals of time with rains that cause a large volume of water to run into and down said natural water drain, channel and ditch, to the place where the said canal and embankment cross said natural water drain, channel and ditch, and which, if not obstructed by said canal and embankment, would flow in its natural course through said natural drain and channel. That the aforesaid culvert was not of sufficient size to carry said water or allow the same to flow past the said embankment, and that said water has at various and sundry times been blocked, stopped and backed up over the surrounding land by said canal and embankment. That at various times before said canal and embankments were constructed the land drained by said natural water drain and channel, and now also by said ditch, had been visited by heavy and excessive rains, and that a large volume or amount of water ran into said natural water drain and channel and down said water drain and channel, and past the place where said canal and embankment was constructed across same, and off the land of the plaintiff. That said defendant, its officers and agents, wholly failed and refused to enlarge said culvert, or to provide any way for the water from said drain, channel and ditch to pass said canal and embankment, and said defendant maintained said canal and embankment across said natural water drain, channel and ditch.

"That on or about the 23d day of July, 1902, the volume of water

flowing down the said natural water drain, channel and ditch aforesaid was increased by reason of rain falling on the land drained by the said natural water drain, channel and ditch, and that the culvert aforesaid was wholly insufficient to carry said water, or to allow same to flow past said canal and embankment, and that said canal and embankment stopped said water from flowing in its natural course, and caused same to back up and flow upon and over the plaintiffs' farm and crops and cover said land and crops. That said water was so held over said crops for four days and nights. That said water was so stopped, obstructed and run over said crops on Thursday evening, and the defendant, though repeatedly notified of such facts, and said fact being well known to said defendant, its officers and agents, the defendant allowed said canal and embankment to remain and dam up said watercourse and ditch, and hold said water, until Sunday night, when said canal and embankment was cut and the water run off of said farm and crops. Plaintiffs further allege that, prior to the obstruction of the said canal and embankment by the defendant, the aforesaid natural drain and channel was of sufficient size and capacity to carry off all waters running into same, and all waters draining into same, and all waters from local rains, etc.; that all said waters ran through said drain and channel, and did not overflow the land through which they ran, and crops on the said land were not overflowed or injured, and not liable to injury therefrom. That the defendant carelessly and negligently constructed its canal and embankment west and south of said crops, and carelessly and negligently filled up and obstructed the natural depressions and channels in said land for the escape of water therefrom, and carelessly and negligently failed to provide, and construct suitable and sufficient culverts, sluices, or other means for water to escape from and run off of the said lands and crops and pass said canal and embankment. That, during the month of July, 1902, the waters flowing in the said natural drain and channel, and in said drain ditch, were dammed up and forced back over the country above the said canal and embankment, and over plaintiffs' said land, and plaintiffs' aforesaid crops were overflowed, damaged and killed thereby, as aforesaid, to plaintiffs' great damage, $1,900, as before alleged."

It was proved that appellant constructed its embankment and canal in such a manner as to obstruct the natural flow of the surface water, and failed to supply drain ditches of sufficient capacity to carry the water off, and it was forced back on appellees' crop and damaged the same in the sum of $611, as found by the jury.

The second, third and sixth assignments of error complain of five paragraphs of the court's charge on the ground that they submit an issue as to the improper construction of the drain ditch, when no such issue was raised by the petition, it being the contention that appellees based their cause of action on the theory that the canal and embankment of appellant was constructed across and obstructed the natural drainage. We think the allegations are sufficient to raise the issue as to whether the drain ditch erected by appellant, in lieu of the natural drain, was sufficient to carry off the water. The petition showed that the flow of surface water had been obstructed by the canal embankment, and that, being thus obstructed, a ditch sufficiently large to carry the water

by a culvert through the embankment had not been erected. The water had no other means of escape except through the ditch.

It appears from the evidence that, after the water had flooded the crops of appellees, they informed appellant of the situation, but nothing was done to drain the farm. After waiting for some time appellees cut the canal embankment, and the land was drained. It is the contention of appellant that appellees should have sooner committed a trespass by cutting its embankment and thus preventing much of the damage to the crop. The duty of cutting the embankment did not devolve upon appellees, even though the whole crop had been destroyed by allowing it to stand. Appellees were guilty of committing a trespass when they did cut the embankment, and appellant can not protect itself from the effect of its illegal act by the plea that appellees should have sooner committed the trespass and removed the obstruction erected by it. The rule in cases of this character is, that an injured person must use ordinary and reasonable care and means to prevent an injury, and the consequences of it, and that he can only recover damages for such losses as could not by such care and means be avoided. (Cooper v. City of Dallas, 83 Texas, 239.) What constitutes such care and means is usually a question of fact for a jury, and it was in this case so submitted to the jury, although the court would have been justified in instructing the jury that appellees were under no obligation to commit a trespass on the wrongdoer's property in order to lessen the damages to their crop.

In the case of Railway v. Young (60 Texas, 201), it was held that it was not the duty of a party, whose crops were destroyed by stock that entered his farm through defective cattle-guards erected by a railway company, to repair the defect, although authority was given to the owner of the inclosure by the statutes of Texas to make such repairs at the expense of the railway company. The court said: "The right of appellee to enter upon appellant's roadway, and in any manner to interfere with it, is only a permissive right given by the statute, without which an interference by him would be a trespass, which he may exercise or not, at his option, without liability to be charged with contributory negligence if he elects not to exercise it."

In the case of Railway v. Reed (22 S. W. Rep., 283), the Court of Civil Appeals of the First District held that: "one is not required to commit a trespass in order to protect or relieve himself from injury resulting from the act of a wrongdoer." The case of Wolf v. Water Co. (15 Cal., 319) is cited, the facts of which case are quite similar to those in this case, and the California court said: "There is nothing in the point that the plaintiffs might, by ordinary diligence, have avoided the injury of which they complain. They could have done so only by the commission of a trespass, and surely they are not to be denied redress because they have chosen to appeal to the law rather than violate it."

The evidence was conflicting on the question as to whether the rain, by which appellees' crop was injured, was or was not an unprecedented one, and the court instructed the jury that appellant was not liable if the rain was extraordinary, and of such unusual occurrence that it could not have been reasonably anticipated by men of ordinary experience and prudence. There was evidence tending to show that the portion of country in which the farm was situated was subject to sudden floods, and,

that such rains as the one which flooded the farm had fallen in that locality before in recent years.  Appellant's proposition that "an extraordinary flood is an act of God, and imposes no liability upon him whose lawful structure is an instrument in causing damage to others," may be abstractly correct, but, where the evidence is contradictory, the jury must determine the character of the flood.  Another proposition, under the ninth assignment of error, that the irrigation company would not be liable, under the facts of this case, unless it was negligent in the construction and maintenance of its ditches, embankments, culverts, etc., is true; but where it is shown, as in this case, that such ditches, embankments and culverts were not sufficient to meet the demands of an ordinary rain, negligence has been proved, and liability for such negligence arises.  There is no force or merit in the contention that, as appellant had employed a civil engineer of acknowledged skill and ability, and he had superintended the work of construction of appellant's irrigation plant, and had used the best material, it was not liable for injuries arising from the failure of its ditches to carry off the water of an ordinary rain, although the water was prevented from running off by the improvements erected by appellant.  There is no sanction in law for such a proposition.  It was the duty of appellant to so construct its canals, ditches and culverts as not to cause injury to adjacent land-owners by the accumulation of water from the ordinary rainfall and freshets in the particular section of country in which they were constructed, and, if this was not done, it is liable, no matter how learned or skillful the civil engineers employed by it may have been.  (Railway v. Parker, 50 Texas, 330; Railroad v. Halloran, 53 Texas, 46.

The rule applied to railroads in the construction of their roadbeds is applicable to appellant: "If a railway company undertakes to change the flowing of surface water, it must see to it that such change does not operate to the injury of the land-owner." (Railway v. Helsley, 62 Texas, 593.)  It is true that in the case cited a statute as to the manner of constructing railroads was being applied, but the court went farther, and said: "Even by courts which follow what is considered the common-law rule, if surface water is collected into artificial channels, and thereby in increased quantities thrown upon the land of another, the person who causes this to be done will be liable for such injury as results."  (See, also, Railway v. Pomeroy, 67 Texas, 498; Railway v. Pool, 70 Texas, 713.)  If, as contended by appellant, the rain was an extraordinary one, still the facts tend to prove that it was such a rain as might have been reasonably expected to occur in that locality, and should have been anticipated by appellant.  (Railway v. Pomeroy, above cited.)

The thirteenth assignment of error complains of the exclusion of evidence of B. M. Boxley, as to the effect that standing and running water would have on growing cotton.  The assignment must fail for the reason that the facts stated to have been excluded are embodied in the statement of facts as a part of the testimony of Boxley.  Appellant agreed to the statement of facts.

The fourteenth assignment of error is directed at the action of the court in permitting the witness W. B. Summers to testify that at and before July 23, 1902, at and in the vicinity of the farm of Black, there existed a substratum of water ranging from four to five feet from the

surface. This was objected to because it was not shown to have existed when the canal was constructed, and, if it did exist at that time, appellant was not bound to take any account of it in making such construction. The bill of exceptions upon which the assignment of error is based is qualified by the statement of the district judge that appellant had brought out, on cross-examination of the' witness, that the ground was in a boggy condition at the time mentioned, and the witness was allowed to testify as he did in rebuttal. Even if that were not the case, we do not see how the evidence could have been detrimental to appellant.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.