## NORDYKE et ux. v. WRIGHT. (No. 10328.)

Court of Civil Appeals of Texas. Dallas. Oct. 13, 1928.

Rehearing Denied Dec. 8, 1928.

See, also, 298 S. W. 910.

L. A. Howard and Schenck & Triplett, all of Lubbock, and Church, Read & Bane, of Dallas, for appellants.

John W. Pope and J. L. Zumwalt, both of Dallas, for appellee.

LOONEY, J. G. G. Wright, receiver of the United Home Builders of America, mentioned hereinafter as the association, sued Charles Nordyke and wife, appellants, on a promissory note for $3,400, and to foreclose the lien of a trust deed given on a tract of land in Callahan county, Tex., to secure the payment of the note.

The association was a co-operative loan organization that operated under a declaration of trust; it issued and sold to members a 3 per cent. loan contract that entitled the holder to a real estate loan equal to the face value of the contract, provided that, when the contract was reached in its numerical order for a loan, 15 per cent. of its face value had been paid in, and a sufficient fund was on hand to make the loan. The member was privileged to sell or assign the contract to any one.

Among other defenses urged by appellants was that of usury. At the conclusion of the evidence, the court directed a verdict for the receiver, judgment was rendered accordingly, from which this appeal is prosecuted.

The material question presented is whether or not the plea of usury was sufficiently supported by the evidence to have carried the case to the jury.

Before discussing that question, we will dispose of appellants' assignment, in which they complain of the action of the trial court in refusing to permit appellant Charles Nordyke to testify to certain facts, set out in a bill of exception properly reserved, approved by the judge, and made a part of the record. As the statement of facts, agreed to by counsel and approved by the judge, contains this identical evidence, we are presented with a conflict between the bill and statement of fact, and in such a case it has been repeatedly held by our courts that the statement of facts must prevail, and we so hold. Therefore the assignment of error, based upon the conflicting bill of exception, is overruled. McMichael v. Truehart, 48 Tex. 216, 220; Wiseman v. Baylor, 69 Tex. 63, 67, 6 S. W. 743; Ramsey v. Hurley, 72 Tex. 194, 200, 12 S. W. 56; Barstow, etc., v. Black, 39 Tex. Civ. App. 80, 86 S. W. 1036, 1039; Elias v. Packard (Tex. Civ. App.) 293 S. W. 641.

Appellant Charles Nordyke, in support of the plea of usury, testified, in substance: That he dealt with the association simply as a borrower of money, and not as a member of the organization; that he was never told it would be necessary for him to purchase contracts, and become a member of the organization in order to obtain a loan; that he neither purchased membership contracts in the association, nor did he authorize any one to purchase same for him, or pay money to any one on his behalf, and the first he knew of the contracts, on which the loan in question was based, was when they were introduced in evidence on the trial of this cause; that the only money received by him from the association on the loan was the sum of $2,460, although the note executed was for the sum of $3,400.

This evidence, standing alone, would undoubtedly have justified, in fact required, the submission of the issue of usury to the jury. On this issue, however, it further appeared that on November 17, 1921, Nordyke made application to the association for a loan of $5,000 (afterwards changed to $4,000), which recited that the United Home Builders of America was operating under a mutual co-operative plan, and, among other things in the application, Nordyke stated:

"I make this application for the loan subject to the following conditions: It is hereby thoroughly understood and agreed by me, in making this application, first, that this loan, if made, will be made by the United Home Builders of America, and accepted by me on the terms and conditions and subject to all of the regulations of said company, and I agree to comply with same."

The note and deed of trust sued on were executed on December 15, 1921, the note for $3,400, payable to W. M. Webb and A. A. Cocke, trustees for the United Home Builders of America, in 85 monthly installments of $40 each, together with 3 per cent. interest, payable monthly on yearly balances on the entire loan, containing this provision that failure to pay the note or any installment of principal and interest, or either, when due, would, at the election of the holder, mature all unpaid installments, "and the deed of trust lien securing same shall become subject to foreclosure, except as is provided in section 8 of the three per cent. loan and home-purchasing contract."

We think these references to the nature of the plan, under which the association conducted its business, and the provision, in the application, that subjected the dealings of the parties to the regulations of the association, were sufficient to arrest the attention of appellants and put them upon notice of the association's plan of operation and of all provisions of the membership contract, including the one providing that loans would only be made on matured contracts.

■ However, we think it immaterial whether Nordyke was or was not a member, either actual or constructive, of the association, for, if he understood that, it was necessary to procure matured contracts as a basis for his application for the loan, and, if he authorized the association to procure these for him, and deduct the cost of same from the loan, he would be liable for the full amount, and not simply for the remainder, after deducting these payments, nor could it be said in such circumstances that the sum paid for the matured contracts was in any sense a charge retained by the association for the use of the money loaned.

■ But, aside from the question of constructive notice just discussed, we are of the opinion that the undisputed evidence recited below shows that Nordyke knew he would be required to procure and own contracts as a basis for his application for the loan, and that he authorized the association to purchase these for him and deduct the price paid from the loan, rendering to him the net amount after such deduction.

On November 22, 1921, a few days after he made written application for the loan, Nordyke wrote the association in regard to the matter, and, among other things, used this language:

"I want to get a loan of—for five contracts of $1,000.00 each, netting me, as Mr. Moore (Moore was the Association's local representative at Abilene) figured it, approximately $3,000.00."

In a lengthy letter to the association, dated January 2, 1922, he wrote:

"I understand that this five-contract loan from you would net me approximately $3,000.00, possibly $100.00 more. If you possibly cannot make the loan on this security, a first lien on my farm in Callahan and a second lien on this place here (Lubbock) for the amount applied for, then can you make it for four of the $1,000.00 contracts? That would get me by, but for a time would leave me a little short."

On February 8, 1922, Sibley & Jordan, attorneys representing the association, wrote Nordyke as follows:

"Dear Sir: We are today in receipt of your fire and tornado policies, each for $850.00, required in connection with the application for a $4,000.00 bonus loan from the United Home Builders of America, which qualified your loan for disbursement and we have placed same in line for awarding of contracts as of this date.

"At this writing the Home Builders do not have any matured contracts on hand, and for the reason they can make a loan only on basis of matured contracts, we will simply have to wait until contracts are available. The Home Builders are unable to obtain contracts but from one source, and that only where members offer same for sale through the office of the company. We do not presume to estimate how soon the contracts will be available since the Home Builders cannot force a member to sell his contracts, but we hope a sufficient number of contracts can be had to make your loan very soon.

"With very good wishes, we beg to remain,
"Yours very truly."

In answer to this, under date of February 15, 1922, Nordyke wrote Sibley & Jordan as follows:

"Hon. Sirs: In answer to your letter, in which you advised there were no matured contracts to take care of my loan, also to make mention of the letter Mr. Moore of Abilene referred to me concerning the advance of the bonus, I will say, on advice of my attorney, I am taking this matter up with Mr. Moore and no doubt you will have a letter from him soon as I have written him fully. I might add that I am looking for my loan to be carried out immediately, as originally proposed.

"With best wishes, I am,
"Very truly yours."

This correspondence shows conclusively that Nordyke knew he would have to own matured contracts to obtain the loan; that these would be purchased for him by the association; that the amount paid for the contracts would be deducted from the amount of the loan; and that he would only receive the net amount left after these deductions.

It further appears from the record that on March 2, 1922, the company having succeeded in purchasing for Nordyke four contracts of $1,000 each, the loan was closed, settlement was made with him, the amount of the loan, less the cost of the contracts, and some other items about which no controversy exists, was paid him, all of which is fully revealed in the following letter from Mr. Jordan, attorney for the association, written to Nordyke under date of March 2, 1922, as follows:

"Dear Sir: I am pleased to advise that contracts have been awarded covering your appli-

cation for a $4,000.00 bonus loan from United Home Builders of America, and enclosed is check #1889 of the Home Builders, payable to your order for $2,478.25, being balance in full of the loan, which has been disbursed as follows:

"1. Paid your bonus bids totaling........... $ 800 00
(This amount should be $600 ahd the correction is properly reflected in the judgment.)
Refund of 15% paid in on the contracts.. 600 00
Transfer fees on said contracts......... 4 00
Attorney's fees........................... 27 75
Reserved for expenses.................... 30 00

$1,461 75

2. Your executed duebill for $100 to E. B. Moore. However, Mr. Moore requests that same be returned to.............. 60 00
3. Check herewith payable to your order... 2,478 25

Total .................................. $4,000 00

"The amount shown above to have been reserved for expenses will be used for recording fees, supplemental abstract fee, etc. We are today remitting to Mr. H. T. Stubbs, County Clerk, the sum of $4.50 to cover recording fees on your homestead designation, the mineral deed and deed of trust. We have ordered supplemental abstract of title to show these and all other instruments pertinent to the title subsequent to the date of the abstract submitted, and as soon as this expense has been paid, the residue of the above deposit will be remitted direct to you.

"With very good wishes, I beg to remain,
"Yours very truly."

After the loan was thus closed and the settlement made, Nordyke paid 18 monthly installments, in accordance with the terms of the contract, and without any protest or objection, 'so far as the record discloses, until after the institution of this suit.

We conclude therefore upon the whole case that there is no room for ordinary minds to differ as to the correct conclusion to be drawn from this evidence, and that, if .the issue had been submitted, as appellants contend should have been done, the jury could not reasonably have found in appellants' favor.

After an exhaustive examination of cases on the subject from courts the country over, Judge Denman, in Joske v. Irvine, 91 Tex. 574, 582, 44 S. W. 1059, 1063, announced the rule that should control trial courts in directing verdicts as follows:

"From a careful examination of the cases, it appears, (1) that it is the d'uty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established— such testimony in legal contemplation falling short of being 'any evidence,' and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines the law presumes that the jury could not 'reasonably infer the existence of the alleged fact' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and

wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining, as a question of law whether the testimony establishes more."

This rule was approved and followed in the following cases: Wills v. Central, etc., Co., 39 Tex. Civ. App. 483, 88 S. W. 265, 270; Harpold v. Moss (Tex. Civ. App.) 106 S. W. 1131, 1133; Missouri, K. & T. R. Co. of Texas v. Williams (Tex. Civ. App.) 117 S. W. 1045; Dayton Lumber Co. v. Stockdale, 54 Tex: Civ. App. 611, 118 S. W. 805, 807; Rogers-Hill & Co. v. San Antonio Hotel Co. (Tex. Civ. App.) 7 S. W. (2d) 601, 604.

Nordyke's statements and conduct revealed by the correspondence leading up to the consummation of the loan, his acceptance of the settlement and partial performance of the contract, evidenced by the 18 monthly payments made thereunder, with full knowledge of all the facts, and without objection until after the institution of the suit, being so inconsistent and irreconcilable with his testimony, that the trial court was justified, under the rule announced by Judge Denman, in treating the same as presenting no evidence whatever on the issue of usury.

We have fully considered all assignments and propositions urged by appellants for reversal, but, finding no error, the judgment of the court below is affirmed.

Affirmed.