## INTERNATIONAL–GREAT NORTHERN R. CO. v. REAGAN.

### No. 1013.

Court of Civil Appeals of Texas. Waco.

Feb. 12, 1931.

Rehearing Denied March 12, 1931.

J. L. Goodman, of Franklin, and Morris, Sewell, Taylor & Morris, of Houston, for appellant.

J. Felton Lane, of Hearne, for appellee.

ALEXANDER, J.

This suit was instituted in the district court of Robertson county by P. C. Reagan against International-Great Northern Railroad Company for damages for the alleged destruction of a part of his cotton crop during the year 1929. It is alleged that Mineral creek runs through appellee's field and under appellant's railway dump, and that appellant failed to construct and maintain the necessary culverts and sluices over said creek, as the natural lay of the land required for the proper drainage of said land; and that as a result thereof the cotton crop on thirteen acres of appellee's land was overflowed and destroyed.

A trial was had before the court without a jury and resulted in judgment for appellee. The railway company appeals. The trial court filed findings of fact and conclusions of law in which it was found that the railway company neglected, and failed, to construct and maintain the necessary culverts and sluices for the drainage of appellee's land, and that as a result thereof the cotton crop on twelve acres of said land was destroyed, and that as a proximate result thereof appellee suffered actual damages in the sum of $288. These findings are challenged by the appellant.

Appellant, by its propositions 1 to 3, inclusive, presents the contention that the appellee based his right to recover damages herein solely on the ground that the appellant had violated the terms of Revised Statutes, article 6328, which requires railway companies in constructing their roadbeds to first construct the necessary culverts and sluices, and that since the roadbed in question was constructed prior to the enactment of this article, appellee had no right to recover for a violation thereof. Revised Statutes, article 6328, provides as follows:

"In no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices as the natural lay of the land requires, for the necessary draining thereof."

This article of the statute was enacted in 1876. The evidence shows that the roadbed in question was constructed in 1872, or in 1873. It has been held that article 6328 is not retroactive and that it could not affect the rights of a railway company whose roadbed was constructed prior to the enactment of that article. Galveston, H. & S. A. Ry. Co. v. Wurzbach (Tex. Civ. App.) 189 S. W. 1006. However, the mere fact that the appellant is not subject to the terms of the statute in question does not mean that it is not subject to the common-law liability for the negligent construction or maintenance of its roadbed. The statute in question merely relieved the injured party from the necessity of alleging and proving negligence, and made the railway company liable as a matter of law if it failed to provide the necessary culverts or sluices, even though it exercised ordinary care in the construction of its roadbed. Under the common law and independent of the statute, a railway company is liable for the damages caused by it by the negligent construction and maintenance of its roadbed. H. & G. N. Ry. Co. v. Parker, 50 Tex. 330; G., C. & S. F. Ry. Co. v. Helsley, 62 Tex. 593; Barstow Irr. Co. v. Black, 39 Tex. Civ. App. 80, 86 S. W. 1036; M., K. & T. Ry. Co. v. Tolbert (Tex. Civ. App.) 134 S. W. 280; 33 C. J. 326. If it so constructs or maintains its roadbed as to obstruct the flow of a well-defined channel and is guilty of negligence in doing so, it is liable for the damages caused as the proximate result thereof. A railway company in the construction of its roadbed is bound to exercise ordinary care for the protection of the rights of others. The appellee did not rely exclusively on the above statute to fix liability. He alleged that the appellant negligently constructed its roadbed across Mineral creek and maintained the same several feet above the level of appellee's land; that it negligently failed to provide the necessary culverts and sluices to permit the water to run off from the ordinary rainfall; and that said acts constituted negligence which proximately caused the injury to his crop. The trial court found that appellant was guilty of such negligence and that its negligence was the proximate cause of the injury. These findings were supported by the evidence, and were sufficient to constitute a cause of action.

Moreover, the evidence shows that in 1926 appellant's roadbed was raised several feet, but the opening under the bridge over Mineral creek was not materially enlarged. The fact that the roadbed had been so raised seemed to have been the contributing cause of the injury complained of. Even though the appellant may not have been subject to the provisions of article 6328 by reason of that article having been enacted after appellant's roadbed was constructed, yet, if appellant, after the enactment of that article, reconstructed and materially changed its roadbed over the creek in question, it would be bound by the terms of that article to provide the necessary culverts or sluices for the proper drainage of the adjoining land and would be liable in damages for its failure to do so. Clark v. Dyer, 81 Tex. 343, 16 S. W. 1061,

1062; International & G. N. Ry. Co. v. Glover (Tex. Civ. App.) 84 S. W. 604; St. L. S. W. Ry. Co. v. Jenkins (Tex. Civ. App.) 89 S. W. 1106.

The appellant, by its propositions 4 and 5, contends that the appellee failed to establish with sufficient certainty the amount of damages sustained by him. The evidence shows that the land in question had been planted in cotton. The cotton was up and had been plowed once before it was overflowed. Thirteen acres of the cotton was washed up. The court found that the cotton on one acre of this land would have been destroyed even though the railway company had not obstructed the flow of the water. The cotton on the other twelve acres was destroyed by the negligence of the railway company. The appellee afterwards replanted the land in cotton, but on account of the wet season he did not get it replanted until in June. The new crop of cotton produced 287 pounds of seed cotton per acre less than the old cotton in the same field that was not destroyed by the overflow. The cotton was worth 7 cents per pound in the seed. The appellee expended $36 for extra labor and seed in replanting the overflowed land, and in addition expended $15 in poisoning the young cotton. The trial court evidently took the difference between the value of the cotton per acre produced from the new cotton on the land that was overflowed and the value per acre of the cotton produced on the other land in the same field that was not overflowed and in this way ascertained the amount of appellee's loss per acre on the twelve acres in question. To this was added the cost of replanting and poisoning the new crop. There was no proof whatever of the cost of producing the crop on the land that was not overflowed, nor of the cost either by comparison or otherwise of producing the new crop on the land that had been overflowed.

In I. & G. N. Ry. Co. v. Pape, 73 Tex. 501, 11 S. W. 526, 527, the court said:

"It seems to us that, as a general rule, the most satisfactory means of arriving at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transportation to market. The difference between the value of the probable crop in the market, and the expense of maturing, preparing, and placing it there, will in most cases give the value of the growing crop with as much certainty as can be attained by any other method. But proof of the additional amount of cotton which the plaintiff would have made but for the overflow, and the value of

such cotton when ready for market, without evidence as to the expense of cultivating, gathering, preparing it for and placing it in market, did not show the value of the crop at the time of the injury, and hence did not afford the proper means of increasing the plaintiff's damage. The testimony, without the additional evidence of the expense of maturing the cotton and placing it in market, should have been excluded."

■ The true measure of damages, where growing crops have been destroyed, is the difference between what the crop would have produced, less the expense that would have been incurred in bringing the crop to maturity, and in gathering and marketing the same. Western Oil Fields Corporation v. Nowlin (Tex. Civ. App.) 288 S. W. 554, and cases there cited. The practical method for calculating such damages is to ascertain the value of the crop actually produced on similar land in the same neighborhood similarly cultivated, and from this deduct the cost that would have been incurred in bringing the crop to maturity and in gathering and marketing the same. This will ordinarily fix the maximum amount of a defendant's liability for such an injury. If the injured crop is not totally destroyed and some crop is afterward produced, the party inflicting the injury would be entitled to credit for the value of the crop actually produced less the cost of finishing and gathering such crop. Where it is practical to plant a new crop after the old one has been destroyed, the injured party should do so in order to minimize his damages. Where this is done, the party inflicting the injury is entitled to credit for the profit on the new crop; that is, the difference between the value of such new crop less the cost of producing, gathering, and marketing the same.

■ In the case at bar, if the proof had shown that the cost of producing and marketing the new crop was the same that would have been incurred in finishing, gathering, and marketing the old crop, if it had not been destroyed, then the cost of producing the one would have offset the cost of the other and appellee's damages would have been the difference between the value of the new crop when gathered and marketed and the value of the crop that would have been produced but for the overflow. Since there was no proof of the cost of producing the new crop nor of the amount that it would have been necessary to have expended in finishing the old crop and gathering the same, the court is unable to ascertain the damages sustained by appellee.

The judgment of the trial court is therefore reversed, and the cause is remanded for a new trial.