## J. M. HUBER PETROLEUM CO. v. YAKE.

### No. 4943.

Court of Civil Appeals of Texas. Amarillo. Oct. 31, 1938.

Rehearing Denied Nov. 28, 1938.

John W. Beveridge and Walter David, both of Borger, for appellant.

J. L. Lackey, of Stinnett, for appellee.

STOKES, Justice.

During the year 1928 appellee, Henry Yake, leased from his brother, William Yake, three sections of land to be used by appellee as grazing land. The lease was oral and was renewed from year to year, appellee retaining possession and use of the pasture lands and grazing cattle thereon continuously up to and including the year 1937. On the 23d of February of that year appellant obtained from William Yake and others, who seem to have had an interest in some of the land, a right-of-way deed, under which it procured the right to install and maintain a pipe line for the transportation of oil or gas across the land. In the latter part of February, 1937, A. R. Tate, under a contract with appellant, entered upon the land and excavated across the same a ditch

some 30 inches deep and about 20 inches in width and installed therein a pipe line composed of pipe of dimensions ranging from 12¾ inches to 18 inches in diameter. The pipe line entered Section No. 2, one of the sections under lease by appellee for grazing purposes, on the south line slightly west of the center, and extended in a northwesterly direction, making its exit near the northwest corner. Approximately two-thirds of the section lies east of the pipe line, the other one-third lying west thereof. Each of the three sections was maintained by appellee under a separate fence, and he kept 52 head of cattle on this Section No. 2. According to the evidence, the grass was better and more suitable for grazing on the east portion of the section than it was on the west portion. The watering place was on the west side of the section and, in order to have access to the water, the cattle necessarily remained in that area a good portion of the time.

Appellee filed this suit against appellant for damages which he alleged he suffered by reason of the ditch being left open which, he alleged, prevented his cattle from passing from the west to the east side of the section. He also alleged that, to prevent the cattle falling into the ditch and from escaping through openings made and left in the fences, it became necessary for him to spend a great deal of time herding the cattle and made necessary considerable labor and expense in restoring the openings in the fences.

The case was submitted to a jury upon special issues and upon the verdict returned by them, judgment was rendered in favor of appellee for the total sum of $409.60, the items making up that amount consisting of $249.60 for damages and injury to the cattle through shrinkage, $140 as compensation to appellee for the time spent by him in riding the ditch and preventing his cattle from injury by falling into it, and $20 as compensation for his time and expense in repairing the fences.

The case is presented in this court upon seven assignments of error, which may be reduced to four contentions made by appellant and which it urges as reasons why the judgment of the trial court should be reversed. It contends, first, that the cause of action involves the title to the land and, appellee's rights depending upon an oral agreement or contract, the county court did not have jurisdiction to adjudicate the title and his lease contract was

void under the statute of frauds; secondly, that the work of excavating the ditch and laying the pipe line was performed by an independent contractor, under a written contract, and, therefore, appellant was not liable for any negligence of the contractor, owed no duty to observe due care toward appellee in respect thereto and that the interpretation of the written contract was a question of law which should not have been submitted to the jury. Thirdly, that appellee could have reduced his damages to an insignificant proportion by filling the ditch himself and, fourthly, error of the court in overruling its motion for a continuance.

The first contention of appellant, viz., that the cause of action involved the title to land, cannot be sustained. The grazing lease was entered into in 1928 and the record shows it was renewed from year to year thereafter. It was to be used, and was used, by appellee as grazing land and not for agricultural purposes. It is true that, in some jurisdictions, it is held by the courts that a sale of growing grass and other vegetable growths that are natural products of the soil and do not require annual expense and attention is regarded as a sale of a portion of the real estate or land itself. We think, however, the better rule is that when the contract contemplates a sale of mere chattels, though they may be the natural product of the soil and attached thereto between the date of the sale and the time when possession of them is to be taken, and does not contemplate an actual transfer of an interest or estate in the land itself, it is regarded as a sale of chattels and does not, therefore, come within the statute of frauds. This rule has been adopted by the courts of this state and is not open to further question. Kreisle v. Wilson, Tex.Civ.App., 148 S.W. 1132. See, also, Purner v. Piercy, 40 Md. 212, 17 Am.Rep. 591.

The Kreisle Case, supra, involved an oral contract for the sale of the grass on land in Victoria County, which was purchased outright. At the time the contract was made, the grass was growing on the land and not ready to be harvested or mowed. It was alleged that the purchaser was prevented from mowing the grass and the action was brought to recover the profits he alleged he would have realized in mowing it and selling it as hay. The contention was made that the subject matter of the oral contract was realty and the contract

was within the statute of frauds. Chief Justice James, in delivering the opinion of the court, quoted from Greenleaf on Evidence as follows [page 1133]:

"Where timber or other produce of the land, or any other thing annexed to the freehold, is specifically sold, whether it is to be severed by the vendor, or to be taken by the vendee under a special license to enter for that purpose, it is still in the contemplation of the parties evidently and substantially a sale of goods only and so is not within the statute."

In reference to the rule so expressed by Mr. Greenleaf, and in approval thereof, the court said:

"These expressions of the rule are so well supported by decisions, although there is considerable conflict, and are so well founded upon reason, that we conclude they were properly recognized as announcing the correct doctrine. There is no reason why annual products of the soil, capable of being, and which are destined to be, marketed annually, should be treated as real estate for all purposes just because for the time being, and awaiting maturity and removal, they are attached to the soil."

■ We agree with the holding of the court in the cited case. It is true that it was not in contemplation of appellee and his brother in making the oral lease involved in this case that the grass would be mowed and converted into hay, but we can see no difference in principle between the sale of grass to be mowed and converted into hay and a case such as this where the lease contemplates that livestock will be grazed on the land and the grass removed and consumed by them as food. The title to the land was not involved. No portion of the real estate nor any interest therein was vested in appellee by the lease contract. The suit, on the other hand, was one for damages to appellee's cattle and did not involve the title to the land in any sense whatever.

■ Furthermore, appellee does not challenge the right of appellant to hold under its right-of-way deed and utilize the strip across the land for the purpose of maintaining thereon a pipe line. He does not contest appellant's title under its right-of-way deed nor make any claim to the portion of the real estate occupied by appellant's pipe line. It is, therefore, not a question of whether or not appellee holds a better title to the land or any portion of it than that which is held by appellant, but only a suit for damages which appellee alleges accrued to him by the manner in which appellant utilized its rights in the land. The title to the land not being in issue, the statute of frauds is not involved, and the suit being for less than $1,000, the county court clearly had jurisdiction of the controversy. These contentions of appellant are, therefore, overruled.

■ Referring to the second contention of appellant in which it claims the work of installing the pipe line was performed by an independent contractor and it is, therefore, not liable for any damages that may have resulted therefrom, the court submitted to the jury special issue No. 1 under which they were asked to find whether appellant, under its contract with A. R. Tate to construct the pipe line, had a right to control the details of the work. The jury answered this special issue in the affirmative and appellant contends that it was a question of law, invoking the well-known rule that the duty of interpreting written contracts rests upon the courts and, being a question of law, is not a proper matter to be submitted to the jury. The rule here invoked by appellant is a general one and is well recognized, but an exception to the rule is observed when the contract is ambiguous and we think the exception applies in this case. The contract introduced by appellant is not clear and free from doubt as to its meaning. Indeed, it is very meager and uncertain in its provisions. It begins as follows: "Gentlemen: Please ship to J. M. Huber Petroleum Company, Production Department, Borger, Texas, the following material, subject to the conditions on reverse side:"

Then follows what appears to be a price list pertaining to the various dimensions of pipe, all of which are similar to the first, which is: "Price on laying, welding, ditching, back-filling, painting welds, 33¢ per foot on 18 inch pipe."

The concluding paragraph of the document is as follows: "You are to act as independent contractor and have absolute charge of the details of the work and management of the men, and we assume no liability for injury to persons or property of any kind."

The name and address of A. R. Tate, Pampa, Texas, appears at the bottom and to the left of the signature of appellant. We do not think this document, standing alone, could be called a contract for the

excavation and laying of the pipe line that was placed upon the land which appellee had under lease. There are no provisions concerning the operations of the contractor further than that he is instructed to "act as independent contractor." Furthermore, it was shown by the evidence that two employees of appellant were constantly on the ground to supervise the welding of the pipe and the digging of the ditch. During the course of the operations, some of the employees of the contractor did not perform the work of welding the pipe in a manner satisfactory to one of these inspectors of appellant, and they were immediately discharged by him, or by the contractor, under the instruction of the inspector. The paucity of contractual provisions in the written document with reference to the manner in which the work should be performed, leaving the writing ambiguous in reference to such matters, together with the conduct of appellant in placing its employees on the ground to supervise the manner in which the ditch was excavated and the joints of pipe welded, together with the conduct of the latter in discharging some of the employees for failing to perform the work in a manner satisfactory to them, clearly presented a question of fact for the jury, and the jury resolved it against appellant. To constitute one an independent contractor he must be engaged in performing a duty for another under conditions where the will of his employer is represented only in the result of the work and not the means by which it is performed. The employer retains no control over the manner or means by which the duties are performed or the result attained. We do not think it can be said from the record before us that the instrument called a contract here involved contained such provisions nor that it was so interpreted by appellant and the contractor. On the other hand, the converse plainly appears in their own construction of it, which is revealed by the manner in which the work was performed and the supervision over its performance that was maintained by appellant through its employees and inspectors. The jury so found and there was ample evidence to support their finding.

Appellant makes the further assertion in this respect that it is not shown that any duty rested upon it to use due care in its treatment of appellee in the matter of constructing the pipe line. We fail to find any merit in this assertion. The facts are that appellee held a lease on the pasture lands and was using them as pasture for his cattle. The grass was better on the east side of the section than it was on the west side. Appellant, under a subsequent arrangement and contract with the owner of the land, entered the pasture, excavated a deep ditch across the same which was permitted to remain open for several weeks and which prevented appellee's cattle crossing from the west side to the east side, thus shutting them off from the better grass, as a consequence of which they shrank in weight which resulted in damage to appellee. Upon entering the pasture and taking over the lands for the purpose of constructing the ditch and laying the pipe line, it became the duty of appellant to use ordinary care in such operations and to maintain the premises in such condition as not to cause injury to appellee. This duty was imposed by the law upon appellant and did not depend upon any contractual relationship between them. The jury found, in effect, that appellant failed in this respect and the finding is supported by the facts proved upon the trial.

It does not appear that it was necessary to leave the ditch open and unfilled, nor that damage to appellee's cattle could not have been avoided. Indeed, we are led to the contrary conclusion by the testimony and by appellant's contention that appellee himself could have filled the ditch within such time and in such manner as to have reduced the damage to a negligible quantity. In our opinion, no error is shown in these assignments and they are overruled. Fox v. Dallas Hotel Company, 111 Tex. 461, 240 S.W. 517.

Under the next contention made by appellant it is asserted that appellee was not denied the right to fill any part of the ditch and it was his duty to fill it himself if those in charge of the work failed to do so, in order to mitigate his damages. It is not asserted that appellant gave to appellee permission to fill the ditch and if, without such permission, he had done so, he would clearly have been guilty of a trespass upon appellant's property. He was under no duty to go to such lengths. The law only requires the use of ordinary care and effort for the protection of oneself from the injurious consequences of the unlawful or wrongful acts of another under such circumstances. He is never required to commit a trespass by entering the premises of another and performing acts cal-

culated to diminish or mitigate damages being suffered by him from conditions that are being maintained by the owner of such premises. We do not agree with appellant in these contentions and they are overruled. Gulf C. & S. F. Ry. Co. v. Reed, Tex.Civ.App., 22 S.W. 283; Barstow Irr. Co. v. Black, 39 Tex.Civ.App., 80, 86 S.W. 1036; Texas & St. Louis R. R. Co. v. Young, 60 Tex. 201; Missouri Pac. Ry. Co. v. Baker, 188 Ark. 143, 64 S.W.2d 321.

The remaining contention of appellant is that the court erred in overruling its motion for a continuance. The motion was based upon the filing by appellee, a few days prior to the trial, of his third amended original petition. It is asserted that in his former pleadings appellee had confined his complaints to Sections No. 36 and No. 2 and, to meet his allegations in respect to these two sections, appellant had taken the oral deposition of a witness at Pampa, in Gray County, who was familiar with all the circumstances concerning the installation of the pipe line. It asserts that this same witness was also familiar with the circumstances pertaining to Section No. 35, but he was not asked in the deposition to testify with reference to anything that happened upon Section No. 35 because it was not included in the pleadings of appellee. The contention is that, in his third amended petition, appellee included Section No. 35 with the other two sections and appellant did not have time to retake the deposition of the witness at Pampa before the trial. We have carefully examined the statement of facts and the special issues with reference to this complaint and it is our opinion that no error is shown by it. As we have stated, the three sections of land were separately fenced. The testimony was confined to the injuries and damage that accrued on Section No. 2, and in submitting the case to the jury, the court confined their consideration to those things which happened on that section. Even if appellant had shown that it was not reasonably possible for it to obtain the testimony in reference to Section No. 35, these contentions would have been without merit because no injury is shown and, under the circumstances, we think none could have arisen.

We have examined all of the assignments of error and propositions presented by appellant and, being of the opinion that no reversible error is shown by any of them, the judgment of the trial court is in all respects affirmed.